By the Court. Duer, J.
The pleadings in this case are singularly constructed, and we should be unwilling to say that any of them, complaint, answer, or demurrers, are framed in entire conformity to the provisions of the Code. That, in some respects, they are at variance with its spirit and meaning, we do not doubt.
But the points, upon which alone the case has been argued, imply a waiver of all special exceptions, and we understand it to be agreed that the question, whether the judgment appealed from shall be affirmed or reversed, depends wholly upon the construction that we shall give to the agreement between the original subscribers to the stock, and the Company, and upon the operation of the act of the Legislature, which, in order to carry the agreement into effect, was subsequently passed.
If the controversy turned upon no other hinge than the terms of the original agreement, we should be compelled to say, that, in their fair and reasonable interpretation, they establish the right of the plaintiff to recover.
We cannot believe that it was the intention óf the parties that the additional shares of stock to "be issued should be applied to the payment of interest to the subscribers by a direct transfer, for the plain reason, that it must have been foreseen by *441 the parties, that, in a vast majority of cases, a payment, by a mere transfer, would be impracticable. It could only be practicable in the cases of an exact correspondence between the amount of the interest to be paid, and the nominal value of the shares to be transferred. Hor can we believe that it was intended that the payments of interest should be made partly in cash and partly in shares, or to some of the subscribers wholly in cash, and to others wholly in shares. The subscribers, under the agreement, had equal rights, and were meant to be placed on the same footing, and, we think, could never have contemplated a mode of payment which would necessarily produce great inequality, and from the discretion it would imply, be liable to great abuse. We are, therefore, satisfied that it was the intention of all that the stipulated payments of interest should be made in money out of the proceeds of the shares to be issued, and not by their immediate transfer. The stockholders might indeed elect to take shares and set off the interest due to them against the price, but the corporation had no election to pay them in cash, or force shares upon their acceptance. The term “payment,” in its legal import, means the full satisfaction of a debt by money, not by an exchange or compromise, or an accord and satisfaction, and it is only where the words used in connexion with it plainly manifest a different intention that the legal import of the term can be rejected. The words of the agreement in this case are, perhaps, ambiguous, but that they are inconsistent with the usual and legal meaning of “ payment ” cannot be pretended.
The stockholders, under the agreement, were to receive interest on the instalments paid by them “ until income should be realized from the road,” and the construction of these words is next to be determined. It is insisted, for the defendants, that the event happened, to which they refer, as soon as any part of the line of the road, however trifling in extent, was completed and used—that is, as soon as upon any portion of the road cars were run, and fare received, and consequently that from this time the right of the stockholders to demand the payment of interest ceased.
That the words in question, literally construed, may bear this meaning, it is unnecessary to deny, but we are satisfied *442 that it is not in this sense that we, in order to carry into effect the real intention of the parties, are bound to understand them. We think the manifest intention of the parties was that interest should be continued to be paid to the stockholders until an income should be realized from the road, that, if exceeding its expenses, would be applicable to the payment of dividends—not until an income should be realized in which they would have no possible right to share. The subscribers could never have meant that it should be in the power of the directors of the Company to stop the payment of the interest, for which they had stipulated, by running cars on a mile or two of railroad in the city of Eew York; núr, unless a decep ' tion was intended, could this have been the meaning of those who acted for the Company in making the arrangement. The word “ road” in the clause, “ until an income shall be realized from the road,” means the road as an entirety, and the realization of an income from it as such, is the event to which the clause refers. . "
We have, perhaps, dwelt longer than was necessary upon the construction of the agreement, since no more can be said on behalf of the defendants than that its terms are ambiguous, and are fairly susceptible of the interpretation for which they contend; but to every argument that has been urged in support of that interpretation it seems to us a conclusive reply, that whatever ambiguity may exist in the terms of the agreement, there is none whatever in those of the act of the Legislature, which was passed for the sole purpose of enabling the Company to carry the agreement into execution. The terms of the law are explicit; they declare that so many shares of stock shall be issued, “ as shall enable the Company to provide for, and pay interest, on the instalments paid in for the construction of the road until it shall be completed and put in operation,” thus plainly settling in favor of the plaintiff, the only question that, upon the face of the agreement, could be regarded as doubtful.
It is said, however, that it is upon the original agreement alone that this action is founded, or can be maintained, and that a subsequent act of the Legislature cannot be permitted to vary its legal construction; and there would, perhaps, be some force in this observation, if the terms of the agreement and of *443 the law were plainly inconsistent, but that there is no such inconsistency we have already shown, and we, therefore, do not doubt that the act of the Legislature truly declares and carries out the intentions which the parties, in the agreement, designed to express. But we go further. Upon the averments in the complaint, not denied in the answer, we must regard it as certain, that the act of the Legislature is the very act for which the parties agreed that application should be made, and as it has been accepted by the Company, and both the Company and its stockholders have acted under it, both, we conceive, are bound by its provisions. Keither, it seems to us, can now be permitted to allege that there is any discrepancy between its provisions and their agreement.
We must, therefore, hold that, until the road was completed and put in operation, the plaintiff was entitled to demand from the Company the payment in money of interest, semi-annually, upon the instalments paid in upon the shares of stock which he holds, and it is scarcely necessary to add that his rights, in this respect, have not been, and could not be, varied by the subsequent resolution of the board of directors, nor by the arrangement which the Company has fortunately been able to make with its other stockholders. Without his individual consent the Company, in respect to his claims, could not be released from the obligations which the agreement and the act of the Legislature created.
The allegation that it does not appear from the pleadings that the Company has issued and sold any shares of stock, from the proceeds of which the demands of the plaintiff may be satisfied, is certainly groundless.
The complaint distinctly avers that the Company has issued and sold a number of shares of stock, under the authority given by the Legislature, and that the proceeds, after the payment of various sums of interest to the plaintiff and other stockholders, left a balance applicable to future payments of interest of about twenty thousand dollars ; and we think that the answer, in admitting that interest for a time was paid to the subscribers in cash, admits, by implication, the truth of these averments.
This balance of $20,000 is the fund out of which the claims of the plaintiff ought to be satisfied, and as the claims of all *444 the other stockholders have been put at rest by an accord and satisfaction, it is far more than sufficient for the purpose. It cannot be pretended that the subsequent misapplication of the fund by the Company has created a bar to his recovery.
The conduct of the plaintiff, in refusing to accede to the mode of settlement which has been deemed satisfactory by all the other shareholders, may be thought unreasonable, but he chooses to stand upon his legal rights, and it is those alone that we, in passing upon his claims, as a court of justice, are at liberty to consider.
We must, therefore, affirm the judgment that he has obtained, but not for the whole amount for which it has been rendered.
The complaint avers that the road was completed and put in operation on the 29th of October, 1851. On that day, therefore, the right of the plaintiff to demand the. payment of interest from the Company wholly ceased. In the judgment as given, however, he has been allowed an excess of interest from the 29th of October to the 15th of November, 1851; and the sum of $262.50 as the semi-annual interest due on the 1st of May, 1852. These sums with interest, as erroneously included, must be deducted from the judgment.
(The plaintiff’s counsel consenting to the deduction, the judgment, so modified, was affirmed with costs.)