JOHN M. KEEP, Complainant, Appellant,

*vs.*

ROBERT F. FRAZIER, Defendant, Appellee.

APPEAL IN EQUITY FROM THE ROCK CIRCUIT COURT.

County orders and jurors' certificates are receivable in payment of county taxes, in the towns where the same are collectable; but after lands have been returned delinquent to the county treasurer, the holder cannot set them off against the unpaid town or county taxes so returned unpaid.

THE substance of the bill, answer and proofs, are fully stated in the opinion of the court.

*Carpenter*, for the appellant.

*Rockwell*, for the appellee.

*By the Court*, WHITON, C. J. The bill of complaint in this case, sets forth in substance, that the complainant was the owner of certain land situated in Rock county, and that he was in the occupation of certain other land, situated in the same county, as the agent of the owners thereof, and that he was under obligation to pay all taxes which should be assessed upon said land; that in the year 1853, the said land was assessed and taxed according to law, in the several towns in which it was situated, and that the taxes were not paid to the town treasurers before it became the duty of the town treasurers to make return of the warrant issued to them for the collection of the taxes on said land; that on the last Monday of January, 1854, all of said land was duly and legally returned to the defendant, who was the treasurer of said county, as land, the taxes on which had not been paid according to law, and that on the first day of February, 1854, all of said land was subject to sale, according to the provisions of the statute in relation to the sale of land for unpaid taxes; that on the 18th day of February, 1854, the whole amount of the taxes, costs, charges and interest, legally charge-

able upon said land, and for which the same was liable to be sold, was no more than $137.35, of which the sum of $27.50 was for county taxes; that on the 18th day of February, 1854, at Janesville, in the office of the county treasurer, the complainant was the owner of county orders legally issued against the said county of Rock, to the amount of $136.28, and then and there, he did offer and tender to the said defendant, as treasurer of said county, the whole of said county orders, and the sum of $1.10 in the legal coin of the United States, amounting in the whole to the sum of $137.38, and did then and there demand of the defendant, that he should receive said county orders and money in full payment and discharge of said taxes on said land, but that the said defendant refused to accept the same in payment of the said taxes; that on the 19th day of February, 1854, the complainant tendered to the defendant the amount of county taxes assessed upon said land, in county orders, the said amount being $28.50, and the sum of $109 in legal money of the United States, that being the full amount of the taxes, costs, charges and interest then legally chargeable upon said land, and requested the defendant that he should receive and accept the same in payment and discharge of the taxes upon said land, but that he refused to accept the same; that the defendant threatens to advertise and sell said land, according to the statute relative to the sale of land for unpaid taxes; that the complainant is ready to pay the said defendant the sum of $136.28, in said county orders, according to the offer made on the 18th day of February, 1854, and the sum of $1.10 in lawful money of the United States; that the complainant is willing, if the court shall so order, to pay the defendant the sum of $27.50 in said county orders and the sum of $109.85 in lawful money of the United States.

The bill prays that the defendant may be decreed to accept the sum offered to be paid in by the complainant on the 18th day of February, 1854, in full discharge of the said taxes upon said land, and that the defendant may be restrained from selling said land to collect the said taxes : also for general relief.

The answer of the defendant admits that the taxes were assessed upon the land, and that the same were unpaid as set forth in the bill. The answer further admits that the land was legally returned to the defendant as county treasurer, by the

town treasurer, as land upon which the taxes had not been paid according to law, as is also set forth in the bill.

The answer further admits, that the whole amount of taxes, costs, charges and interest legally chargeable upon said land on the 18th day of February, 1854, and for which the same was liable to be sold, was no more than $137.35, and that the sum of $27.50 was for county taxes. The answer denies that the complainant offered or tendered his county orders or money, on the 18th of February, 1854, as stated in said bill, or that the defendant should receive the same in payment and discharge of the taxes upon said land, but states that the defendant is informed and believes, that at the time and place stated in the bill, the complainant, or some person for him, applied to the deputy of the defendant, and offered him in payment of taxes, a large amount of county orders (the particular amount of which the defendant is unable to state), and a one dollar bank bill, and ten cents in coin ; that the defendant is informed that no particular lands were specified in the offer, and that the said deputy did refuse to receive the said county orders, bank note and coin in payment of said taxes. The answer also denies that the complainant tendered or offered to him any county orders or $109 in money, but states that the defendant is informed and believes, that the last-mentioned sum was tendered or offered in bank notes to the deputy of the defendant, by the complainant or some one for him, together with the sum of $28.50 in county orders in payment of taxes, but that no particular land was specified on which the taxes were to be paid.

The answer admits that the defendant was informed by his deputy that this offer was refused.

The answer further states that prior to, and at the time at which these tenders or offers were made by the complainant, there had been presented for payment to the defendant at his office, county orders against said county of Rock, to the amount of $1,998.34, which remained unpaid for want of funds in the treasury of said county, wherewith to pay the same; no part of which orders were owned by the complainant, and that said county orders were, by law, entitled to priority of payment.

There were other matters set up in the answer which it is unnecessary to notice.

Keep vs. Frazier.

At the hearing, the parties stipulated that the facts in the case were as follows:

That the complainant was the owner, and agent of the owners of the lands, as alleged in the bill; that the statements contained in the bill as to the assessment of taxes thereon, the nature of the land, and the amount due for taxes, charges, &c., on the 18th of February, 1854, are true; that the offers above mentioned were made to the deputy of the treasurer, at the office of the treasurer, as set forth in the bill; that the defendant intended to, and unless he had been restrained, would have sold the land as alleged in the bill; that the statement contained in the answer as to the amount of county orders presented and unpaid, is true; that the orders offered by the complainant were of a date subsequent to those which had been presented at the office of the defendant, and had not previously been presented for payment; and that there was no money in the county treasury. It was further agreed by the parties, that the complainant had the same orders and money in court, for the defendant, which he had offered to the defendant, and that the complainant owned the orders which were thus offered to the defendant.

The Circuit Court dismissed the bill, and from the order dismissing it, this appeal is taken.

We think that the order is correct, and must be affirmed.

It is assumed by the counsel for the appellant, that as to the county tax on the land belonging to the complainant, the county was his creditor, and that in respect to the county orders, he was the creditor of the county, and became entitled to set off his demand against the demand which the county had against him accruing from the tax.

But we are of opinion that this view of the matter is incorrect. Our statute regulating the manner in which county orders shall be paid (*Rev. Stat. chap.* 10, § 110), and the statutes regulating the mode of collecting taxes on land, and providing for a sale of the land for the purpose of enforcing the collection (*Rev. Stat. chap.* 15, §§ 56, 70, 85, 86, 87, 90), are entirely inconsistent with the position taken by the complainant. By section 110 above referred to, it is provided that county orders shall be entitled to a preference as to payment, according to the order of time in which they may be presented to the county treasurer, which

provision would be defeated by allowing those who have taxes to pay to the county treasurer, to compel that officer to apply county orders which they may have in their possession to such payment, and which had never before been presented for payment, when, as in this case, county orders had been presented by other persons, and remained unpaid for want of funds in the county treasury with which to pay them. Our statutes contain liberal provisions upon the subject of the payment of county taxes by county orders. *Section 56, of chap.* 15 of the Revised Statutes compels the collector of taxes to receive county orders and jurors' certificates to the full amount of the county tax which he is authorized to collect, and *section* 110 *of chap.* 10, above referred to, compels the county treasurer to receive them of the collector. We are not aware of any other mode under our statutes in which county orders can be made available in the payment of taxes, when there is no money in the county treasury. Independent of the statute, we think the right to compel the treasurer to make the offset does not exist.

Taxes are not properly judgments or contracts, but are positive acts of government which bind those who are subject to them, without their individual consent. *Pierce vs. Barton,* 3 *Met. R.* 520.

The operations of a government would be liable to constant interruption, if without its consent its revenues could be appropriated by its creditors, before they reached its treasury.

We are, therefore, of opinion that upon general grounds of public policy, as well as by force of the provisions of our statutes, the right to compel the county to make the offset, does not exist.

The order of the court below must be affirmed.