THE STATE OF KANSAS v. C. L. HAUN.

No. 492.

1. CORPORATIONS—*Payment of Wages of Employees*. Chapter
145, Laws of 1897, entitled "An act to secure to laborers and
others the payment of their wages, and prescribing a penalty for
the violation of this act, and repealing sections 2441, 2442 and
2443 of the General Statutes of 1889 and all acts and parts of acts
in conflict herewith," is *held* to apply only to corporations and
trusts that severally employ ten or more persons.

2. CONSTITUTIONAL LAW—*Title of Act—One Subject*. The title of
said act is *held* not to be in conflict with the first clause of section
16, article 2, of the state constitution, which provides that no bill
shall contain more than one subject, which shall be clearly ex-
pressed in its title.

3. —— *Laws of General Nature—Uniform Operation*. Said
act is not in conflict with section 17, article 2, of the state consti-
tution, which reads: "All laws of a general nature shall have a

uniform operation throughout the state; and in all cases where a general law can be made applicable no special law shall be enacted."

4. ———— *Due Process of Law—Natural Rights.* Said act is *held* not to be repugnant to the provisions of section 1 of the fourteenth amendment to the constitution of the United States, nor to those of section 1 of the bill of rights of the state constitution.

5. ———— *Corporate Charters—Legislative Authority to Amend.* Said act is *held* constitutional as a valid exercise of legislative authority to alter and amend corporate charters.

Appeal from Crawford district court; WALTER L. SIMONS, judge. ·Opinion filed August 18, 1898. Affirmed.

*Perry & Crain*, and *Morris Cliggitt*, for appellant.

*L. C. Boyle*, attorney-general, and *T. J. Widby*, for appellee.

The opinion of the court was delivered by

MILTON, J.: From a conviction under an information charging a violation of chapter 145, Laws of 1897, C. L. Haun appeals. It was charged that Haun was agent and cashier of the Kansas Commercial Coal Company, a corporation doing business in Crawford county, Kansas, in operating coal-mines, and employing more than ten persons in operating said mines in that county, and that as such agent and cashier Haun did unlawfully, and on behalf of the coal company, sell, give and deliver a certain order, commonly called a punch-check, to one E. P. Graves, a miner employed by the corporation in its mines, for wages then earned by said Graves and not yet due and payable to him. The information set out a copy of the check, and averred that it had originally contained various mar-

The State v. Haun.

ginal figures, aggregating two dollars, and that such figures had been punched out.   The check reads :

"$2.00.                    FULLER, KAN., 9–22–1897.
"*Kansas Commercial Coal Company :*

"Please accept this as my order for store merchandise to the amount of two dollars, and charge the same to my account.   Not transferable.
"No. 452.                          E. P. GRAVES."

Trial by jury was waived, and the case submitted to the court upon an agreed statement of facts; which, in addition to admitting the foregoing allegations of the information, stipulated that the order or punchcheck was issued to Graves "only upon the application and request of said Graves, and between the pay-days of the said Kansas Commercial Coal Company, and at the time when no wages were due and payable to the said Graves by the contract under which the said Graves was then and there performing labor for the Kansas Commercial Coal Company."

The title and sections 1, 2 and 4 of chapter 145, Laws of 1897, read :

"AN ACT to secure to laborers and others the payment of their wages, and prescribing a penalty for the violation of this act, and repealing sections 2441, 2442 and 2443 of the General Statutes of 1889, and all acts and parts of acts in conflict herewith.

" SECTION 1.   It shall be unlawful for any person, firm, company, corporation, or trust, or the agent or the business manager of any such person, firm, company, corporation, or trust, to sell, give, deliver, or in any way directly or indirectly, to any person employed by him or it, in payment of wages due or to become due, any scrip, token, check, draft, order, credit on any book of account or other evidence of indebtedness, payable to bearer or his assignee, otherwise than at the date of issue, but such wages shall be paid only in lawful money of the United States, or by check or draft drawn upon some bank in which any person, firm, company, corporation, or trust, or the agent or the business manager of any such per-

son, firm, company, corporation, or trust, has money upon deposit to cash the same.

"Sec. 2. All contracts to pay or accept wages in any other than lawful money, or by check or draft, as specified in section 1 of this act, and any private agreement or secret understanding that wages shall be or may be paid in other than lawful money, or by such check or draft, shall be void, and the procurement of such private agreement or secret understanding shall be unlawful and construed as coercion on the part of the employer.

"Sec. 4. This act shall apply only to corporations or trusts, or their agents, lessees, or business managers, that employ ten or more persons."

Section 3 declares that any person who shall violate any of the provisions of either section 1 or 2 of the act, or shall compel, or in any manner attempt to compel or coerce, any employee of any corporation or trust to purchase goods or supplies from any particular person, firm, corporation, company, or trust, or at any particular store or place, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine or imprisonment, or both.

As section 4 expressly limits the application of the statute to corporations or trusts employing ten or more persons, it follows that all parts thereof inconsistent with this limitation must fall. The provision of section 3 concerning coercion of employees in respect to purchase of goods and supplies is clearly not within the scope of the act as indicated by its title and consequently cannot be regarded as a valid part of the act. Eliminating these provisions, the act in substance provides : ( 1 ) That it shall be unlawful for any corporation or trust which employs ten or more persons to pay the wages of its employees otherwise than in lawful money, or in checks or drafts drawn against bank deposits of money ; ( 2 ) that all con-

tracts for other kinds of payment shall be void, and procurement of such contracts shall be construed as coercion on the part of the employer; (3) that any violation of the provisions of sections 1 or 2 of the act shall be a misdemeanor.

The word "trusts," as used in the act, has been regarded by counsel as being equivalent to "corporations," and we shall consider the case with reference to corporations alone. In the trial court the defendant challenged the constitutionality of this act, and the grounds of such challenge are now presented to this court.

I. It is claimed that the act is in conflict with section 17, article 2, of the state constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state, and in all cases where a general law can be made applicable no special law shall be enacted."

It is urged that this legislation is void for the reason that it singles out certain corporations — that is, those which severally employ ten or more persons — and arbitrarily deprives them of rights and privileges which are retained by all other corporations and trusts and individuals. We regard this objection as untenable. In the case of *McAunich v. M. & M. V. Rld. Co.*, 20 Iowa, 343, in considering an objection to a certain law as being class legislation, the court said:

"These laws are general and uniform, not because they operate upon every person in the state, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the law. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of persons within the scope of their operation."

33—7 KAN. APP.

The above is quoted with approval by the supreme court of the United States in the case of *Chicago &c. Rld. Co. v. Iowa*, 94 U. S. 163. In *Barbier v. Connolly*, 113 U. S. 27, 32, it was objected that an ordinance of the city of San Francisco was in conflict with the fourteenth amendment of the federal constitution, in that it discriminated between laborers engaged in the laundry business and those engaged in other kinds of business, and between laborers within the limits designated by the ordinance and those outside of such limits. The court said:

"Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

In *Mo. Pac. Rly. Co. v. Haley*, 25 Kan. 35, the case of *McAunich v. Railroad Co.*, supra, is cited and expressly followed. In *Shaffer v. Union Mining Co.*, 55 Md. 74, an act to prohibit the payment of employees of certain corporations operating in Allegany county otherwise than in legal-tender money of the United States, and which included only corporations engaged in mining or manufacturing or operating railroads in that county, and employing ten or more persons, was held valid as an exercise by the legislature of its power to alter and amend corporate charters. In the case of *State v. Peel Splint Coal Co.*, 36 W. Va. 802, the constitutionality of a statute, the operation of which was similarly limited, was sustained, and the provision limiting its application was expressly declared not to be "class legislation."

II. It is earnestly contended that this act violates the first clause of section 16, article 2, of the state

constitution, which provides that no bill shall contain more than one subject, which shall be clearly expresed in its title. Counsel for appellant say that a reading of this title shows the subject of the legislation is *to secure* to laborers the payment of their wages, not necessarily in money, but in anything, or in any manner, or at any time, the parties choose to fix. We quote from their brief :

"The title conveys to the mind three ideas : (1) That its purpose is *to secure* to laborers the *payment* of their *wages*. (2) The infliction of a penalty for doing anything to prevent the securing of the payment. (3) That certain sections of the revised statutes, and any other conflicting enactments, are repealed. This may be further simplified by stating that the title conveys nothing more than that the purpose of the act is *to make safe* the payment to laborers of their wages. If, therefore, the act does anything more than to secure the payment of wages, it infringes the mandate of the constitution."

Also :

"The attorney-general seems to be of the impression that the court is at liberty to turn to the body of the act in order to ascertain the purpose of the legislature. This is evidently a fallacy ; for, if so, the constitutional provision is robbed of all force. It was to obviate the necessity of reading the act that it was inserted in the constitution. It was that men might know from the title clearly and in a general way what the legislature intended to do."

We think the last contention cannot stand, in the light of the decisions in *The State v. Barrett*, 27 Kan. 213, and in *City of Wichita v. Burleigh*, 36 id. 34.

In the first of these cases the court said :

"In construing the title to an act, as well as the act itself, reference must be had to the object of the act and to the evils sought to be remedied by it."

In the latter case, one paragraph of the syllabus reads:

"A slight inaccuracy in a description of a thing in an act of the legislature, or in the title to the act, will not render the act void, where it may be known both from the act and the title thereto, and the circumstances then existing, what was meant and was intended by the legislature."

Reading the act itself, it is clear that its object is to require each corporation which employs ten or more persons to pay the wages of its employees in money, or in checks or drafts drawn against bank deposits of money, by declaring any other mode or kind of payment unlawful. The phrase "to secure" is not used in the sense of "to give security." In the Century Dictionary, "to obtain" and "to give" are given as synonyms of the verb "to secure," while in the Standard Dictionary "get," "obtain" and "attain" are given as its synonyms. One definition of "to attain" given in Webster's International Dictionary is "to procure." One of the meanings of "to secure" given in Anderson's Dictionary of Law is "to procure." The word "payment" is thus defined in the Century Dictionary: "The act of paying; the delivery of money, as payment in the course of business."

In Bouvier's Law Dictionary, 15th ed., under the word "payment" it is said: "It is now the law for all classes of citizens that payment must be made by money, unless the obligation is, by the terms of the instrument creating it, to be discharged by other means." Rapalje and Lawrence's Law Dictionary thus defines "payment": "A transfer of money from one person (the payor) to another (the payee)." Worcester defines the word "wages" as follows: "In ordinary language the term 'wages' is usually em-

ployed to designate the sums paid to persons hired to perform manual labor.'' Employing some of the foregoing definitions, the title under consideration may be read : ''An act to procure, get or obtain for laborers the payment of their wages in money,'' etc. ''To secure'' conveys the idea of certainty of the hold which one gets or obtains. It is this certainty which the present law intends to bring about. Such intention is plainly manifest in the language employed in the title. In Sutherland on Statutory Construction, section 87, it is said the title

''Must state the subject of the act for the purpose of information to the members of the legislature and the public while the bill is going through the forms of enactment. It is not required that the title should be exact and precise. It is sufficient if the language used in the title, on a fair construction, indicates the purpose of the legislature to legislate according to constitutional provisions, so that, making every reasonable intendment in favor of the act, it may be said that the subject or object of the law is expressed in the title.''

And again :

''When the subject is stated in the title the constitution is so far complied with that no criticism of the mode of statement will affect the validity of the act. The statute is valid in such a case ; the degree of particularity in expressing the subject in the title is left to the discretion of the legislature. No particular form of words has been prescribed in the constitution for expressing the subject or purpose of the statute in its title. It need not index the details of the act, nor give a synopsis of the means by which the subject of the statute is to be effectuated by the provisions in the body of the act.''

These propositions are amply supported by the authorities cited in the notes to that section.

It is evident that the title of the act is broader than the act itself, as limited by section 4 thereof, but this does not invalidate the act. (Sutherland, Stat. Constr., § 87, and cases there cited.)

III. It is contended that the act is repugnant to section 1 of the fourteenth amendment to the constitution of the United States, wherein it is provided that no state shall deprive any person of life, liberty or property without due process of law, and also contrary to the provisions of section 1 of the bill of rights of the state constitution, which reads : "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness." This objection has been presented with great vigor and ability. An investigation of the authorities has shown that laws similar in principle to the present act have been upheld as to corporations, on the ground of legislative authority to amend corporate charters. We believe no case has been pointed out where such an enactment has been unqualifiedly declared to be a valid exercise of the police powers of the state in respect to natural persons.

The question which we shall consider is, whether the legislature in enacting the present law has or has not exceeded its constitutional power to amend corporate charters. Section 1, article 12, of the constitution of the state reads :

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws ; but all such laws may be amended or repealed."

In the case of *The State v. Mo. Pac. Rly. Co.*, 33 Kan. 176, 189, it was held that whatever corporate rights or powers certain railroad companies, the parties defendant in that action, had obtained under or

The State v. Haun.

by virtue of the laws of the state, such rights were subject to modification or change by amendment or repeal of the laws which granted such rights and powers.

In the case of *Shaffer v. Union Mining Co.*, supra, an act entitled "An act to prohibit the payment of employees of certain corporations operating in Allegany county otherwise than in legal-tender money of the United States," was declared to be within the reserve power of the legislature to amend corporate charters. The act applied only to corporations engaged in mining or manufacturing or operating a railroad in Allegany county and severally employing ten or more persons.

The court, by Irving, J., said:

"It being conceded that the legislature, when it incorporated the Union Mining Company, reserved the right to alter or amend its charter at pleasure, there can be no doubt that the legislature could enact a law prohibiting the corporation from paying its employees otherwise than in money, and that it could forbid the corporation from making contracts with them for payment in anything but money. . . . The acceptance by the corporation of a charter with the reservation of the right to alter and amend made that provision a part of the contract, which, as between the legislature and it as a private corporation, it must be understood to be. A corporation has no inherent or natural rights, like a citizen. It has no rights but those which are expressly conferred upon it, or are necessarily inferable from the powers actually granted. A private corporation is only a *quasi* individual, the pure creation of the legislative will, with just such powers as are conferred expressly or by necessary implication, and none others. Whatever, therefore, may have been the mischief intended to be reached and prevented by this law, by restrictions imposed on the corporations, it was competent for the legislature by

this law, which operates as an amendment of its charter, to accomplish.''

In the case of *State v. Brown & Sharpe Mfg. Co.*, 25 Atl. Rep. 246, the supreme court of Rhode Island sustained the constitutionality of a statute providing for the weekly payment of wages to employees of all corporations other than religious, literary, or charitable.

After quoting with approval from the opinion in *Shaffer v. Union Mining Co.*, supra, and from a large number of other decisions, the court said :

''But for the power granted by the legislature corporations could not make any contracts, and we see no reason why the legislature, under its reserve power to amend charters, cannot limit the power to contract in the future just as they might have fixed it in the original charter, if any reasonable purpose is to be subserved thereby.''

The court also made this further observation, which is applicable here :

'' The argument at bar, that the power to contract, granted in the charter, was such property of defendant that modifying or limiting it by the general assembly was taking away defendant's property without compensation, does not seem to us to be well founded. The property of a corporation that cannot be taken away by the general assembly through the exercise of its reserved power is such property as, upon the dissolution of the corporation, would belong to the creditors and stockholders, and not a privilege it derived from the creative power, and which it was agreed, upon accepting the charter, might be amended at will by the general assembly.''

The case of *Leep v. St. L. I. M. & S. Rly. Co.*, 25 S. W. Rep. 75, involved the constitutionality of an act of the legislature of the state of Arkansas, by which all corporations, companies and persons engaged in the business of operating and constructing railroads

The State v. Haun.

and railroad bridges were required to pay their employees, on the day of their discharge, the unpaid wages then earned by them, at the contract rate. The court held that as to natural persons this act was unconstitutional, but that it was a valid exercise of the right to amend corporate charters. After reviewing with approval a large number of decisions wherein various laws had been declared invalid as depriving individuals of natural rights, and especially of the right to contract, the court said :

" But what is true of persons is not always true of corporations. Natural persons do not derive the right to contract from the legislature; corporations do. They possess only such powers or properties which the charters of their creation confer upon them, either expressly or as incidental to their existence, and these may be modified or diminished by amendment, or extinguished by the repeal of their charters."

It is unnecessary to cite others of the large number of cases in which similar declarations have been made.

Incidentally it may be observed that there is room for doubt concerning the power of the Kansas Commercial Coal Company, which we assume, in the absence of evidence, to have been organized under the statutes of this state or under similar laws, to issue scrip or punch-checks, as a means of payment of wages due its employees. The record in this case indicates that it was the practice of the coal company to issue such checks to its employees and to receive the same in payment for merchandise.

Section 13, chapter 66, of the General Statutes of 1897, reads, in part : " Every corporation, as such, has power : . . . *Seventh*, To enter into any obligation or contract essential to the transaction of its ordinary affairs." It will be seen that this statute does not grant to corporations the full powers of con-

tracting which are possessed by individuals ; on the contrary, it expressly limits their powers in this regard.    The language of the limitation is very plain. The ordinary affairs of a corporation are those which it is chartered to engage in, and it has authority to enter into contracts essential to the transaction of such affairs ; but it has no authority to enter into contracts not so essential to or not actually connected with the business or enterprise for which it was chartered.    Limitation of corporate powers was recognized by the supreme court of this state in the case of *Getty v. Milling Co.*, 40 Kan. 281.    There it was held, that while the milling company might under peculiar circumstances have purchased flour to sell again to meet some temporary want, or to supply and protect its trade, yet that it could not engage in that class of business under its charter ; and that where the plaintiffs sought to justify, and recover upon a sale of flour to the president of the corporation, they must either show that the purchase came within the purview of the charter or else some peculiar facts or circumstances that make an exception to the general rule.

The extracts quoted from *Shaffer v. Mining Co.*, *State v. Brown & Sharpe Mfg. Co.*, and *Leep v. Rly. Co.*, supra, bear upon this question of limitation of corporate rights and powers.

From the foregoing, it would seem that the present act does not invade any clear and unquestioned right of the corporation here concerned, and we think it proper to hold that the objection, that the act is unconstitutional because it invades the inherent right of corporations, is not well founded.    The record contains nothing to indicate that the payment of wages of its employees otherwise than in money or in checks

or drafts drawn upon bank deposits of money was or is essential to the transaction of the ordinary affairs of the Kansas Commercial Coal Company. But it is not intended to rest the decision in this case upon the proposition just considered. We prefer to rest it upon the basis of a constitutional exercise by the legislature of its powers to amend corporate charters. If corporations created under our laws possessed the power to pay the wages of their employees otherwise than in money, and make binding contracts for such payment, such power no longer exists on the part of any corporation coming within the purview of the present act.

The power in question has been taken away from each of such corporations by this act, which by its title purports to repeal "all acts and parts of acts in conflict herewith." We do not understand that any claim as to the insufficiency of the title concerning this matter has been raised by counsel. As at present advised, we see no reason to doubt its sufficiency. ( See *Board of Health of Brighton v. City of Rochester*, 56 Hun, 45.) The record shows that appellant violated the act under consideration. Holding the act to be constitutional, the judgment of the district court will be affirmed.

Schoonover, J., concurring.

Dennison, P. J., dissents to that part of the opinion expressed in the second paragraph of the syllabus.