ONEIDA COUNTY and others, Appellants, vs. TIBBITS and others, Respondents.

*February 21—May 2, 1905.*

*Taxation: Payment of taxes: What is receivable: Liability of collecting officers.*

1. The receipt of governmental revenues in *money* is so essential to the performance of the functions of government that no contrary policy can be assumed without express legislative declaration.
2. Under sec. 1077a, Stats. 1898 (providing that the fees and expenses of a commission to review the county equalization are, with all other expenses connected with the making of the application and the subsequent proceedings, to be audited and allowed as a county charge by the county board or by the cir-

cuit judge appointing the commission, and when audited by the circuit judge are to be paid in the same manner that jurors and witnesses in state cases are paid), town treasurers have no authority to accept certificates of audited expenses in equalizing county assessments in payment of taxes, or to be allowed credit for them in performing the legal duty of payment to the county treasurer.

3. The ascertainment and payment of jurors and witnesses in state cases is expressly regulated by sec. 2560, Stats. 1898, as to jurors, and sec. 4060 as to witnesses, the provision as to payment (that the county treasurer shall pay the amount thereof out of the county treasury) being in identical words as to both. Sec. 1091 provides that "county orders and jurors' certificates shall be receivable for taxes in the county where issued, and shall be allowed the treasurers on settlement of such taxes." *Held*, that certificates issued under sec. 1077*a* are not receivable for county taxes by virtue of sec. 1091.

4. "To pay" means primarily to transfer or deliver money or other agreed medium from the debtor to the creditor; while the word "payment" is often used merely to signify satisfaction or discharge of an obligation by any means.

5. "To pay" and "payment" are not equivalent, for while payment works satisfaction of an obligation, satisfaction and discharge may be accomplished without payment.

6. A town treasurer, having returned officially that the county taxes are actually paid to an amount exceeding what he settled for in a sum represented by certain certificates improperly accepted in lieu of money for taxes, without in any way indicating the individual taxes in satisfaction of which he accepted those certificates, is in no position to deny, as between himself and the county, that he has received all the taxes so returned as paid, and he, and the sureties on his official bond, are liable for the penalty and interest imposed by sec. 1117, Stats. 1898.

APPEAL from a judgment of the circuit court for Oneida county: W. C. SILVERTHORN, Circuit Judge. *Reversed.*

After a review of the equalization of the valuation for taxation of the various municipalities in *Oneida* county for the year 1899, had upon the petition of the towns of Woodboro and Hazelhurst in pursuance of sec. 1077*a*, Stats. 1898, said towns, upon notice given the attorneys who had appeared before said commission for review, presented to the circuit judge

statements of their expenses claimed to have been incurred in connection with the making of the application and the subsequent proceedings. Such statements included approximately $3,000 expended for estimating timber lands through the county, the persons to whom it was paid having been called and testified as witnesses upon the hearing. Most of this expense was incurred for work done prior to making the application. The circuit judge made so-called findings allowing such expenses and apportioning them between the two towns—sixty-eight per cent. to Hazelhurst and thirty-two per cent. to Woodboro—and directing the clerk of the circuit court for *Oneida* county to draw and issue to each of said towns a certificate for its amount, which he did. Attempted transfer of these certificates was made by the town of Hazelhurst to one Yawkey, and by the town of Woodboro to one A. O. Jenne. At the time for payment of taxes in the spring of 1900, each of these assignees tendered certain of the above-mentioned certificates in payment of county taxes. The treasurer of each of these towns received such certificates in payment of county taxes and gave receipts in full to the persons so paying; and, in settlement with the county treasurer, each tendered such certificates in satisfaction of so much of their amount of the county taxes. The county treasurer refused to receive the same. The certificates were deposited in bank subject to his order, and the respective town treasurers refused to otherwise pay over the amount of the county taxes returned by them as collected. These actions were commenced by *Oneida* county against the respective town treasurers and their bondsmen to recover the amounts so refused to be paid. After trial the court held such certificates valid obligations, and also held that the validity of the circuit judge's order allowing the expenses was impregnable to collateral attack; that the town treasurers were obliged to receive such certificates in payment of county taxes, and that their receipt for that purpose paid such taxes and paid such certificates, and that the county treas--

urer was bound to receive them in settlement from the town treasurers; and that the town treasurers had therefore fully paid over all for which they were liable upon their respective warrants and bonds. Whereupon judgment in each case was entered for the defendants, from which the plaintiffs appeal.

For the appellants there was a brief by *Sam. S. Miller,* district attorney, and *Greene, Fairchild, North & Parker,* of counsel, and oral argument by *Geo. C. Greene.*

*John Barnes,* for the respondents.

The following opinion was filed March 14, 1905:

Dodge, J. At the very threshold of this case we meet a question which, if answered in favor of the appellants, completely disposes of all defense. That is, whether the town treasurers had any authority in law to accept the certificates of audited expenses, even if valid and proper, in payment of county taxes, as collecting agents for the county, and to tender them in place of money. Such authority must rest in express statute, for the receipt of governmental revenues in money is so essential to the performance of the functions of government that no contrary policy can be assumed without express legislative declaration. *Keep v. Frazier,* 4 Wis. 224; *Iron River v. Bayfield Co.* 106 Wis. 587, 592, 82 N. W. 559; 2 Cooley, Taxation (3d ed.) 804; 27 Am. & Eng. Ency. of Law (2d ed.) 751. Highly important governmental duties are delegated to counties, upon the performance of which the welfare of the whole community depends, such as maintenance of highways and bridges, as also of courts of justice; registration of conveyances; erection, repair, and preservation of public buildings, court-houses, jails, county asylums, and the like. To accomplish these, much wisdom and discretion must be exercised in making provision for revenue in advance for each year and in applying it. Any substantial failure or interruption of revenue may seriously embarrass, if not wholly suspend, the performance of such duties. It is not surprising, therefore, that

we find the rule uniform among courts to restrict to their very
words all statutes tending to such results—indeed, often to·
deny general words their full force, in deference to the pre-
sumed improbability of any intent to disturb public business.
Thus both the ·garnishment and mechanics' lien statutes are,
upon such grounds, held not to reach counties or cities, al-
though by their terms they apply to all corporations. *Burn-
ham v. Fond du Lac,* 15 Wis. 193; *Buffham v. Racine,* 26
Wis. 449; *Merrell v. Campbell,* 49 Wis. 535, 5 N. W. 912;
*Wilkinson v. Hoffman,* 61 Wis. 637, 21 N. W. 816; *Pittsburg·
T. Laboratory v. Milwaukee E. R. & L. Co.* 110 Wis. 633, 86
N. W. 592.'. On similar grounds, setoff or counterclaim of
municipal obligations against taxes is denied. 1 Cooley, Tax-
ation (3d ed.) 20; *Anderson v. Mayfield,* 93 Ky. 230, 235,
19 S. W. 598; *Finnegan v. Fernandina,* 15 Fla. 379. Other
illustrations of the strictness of construction applied to stat-
utes authorizing payment of taxes otherwise than in money
are *State ex rel. Egger v. Payne,* 151 Mo. 663, 52 S. W. 412;
*Kansas City, F. S. & M. R. Co. v. Thornton,* 152 Mo. 570,
54 S. W. 445; *Bummel v. Houston,* 68 Tex. 10, 2 S. W. 740;
*Jones v. Melchior,* 71 Miss. 115, 13 South. 857.

Respondents rely for authority in accepting these certifi-
cates on sec. 1077a, Stats. 1898, which provides that the fees
and expenses of a commission to review the county equaliza-
tion are, "with all other expenses connected with the making of
the application and the subsequent proceedings, to be audited
and allowed as a county charge by the county board or by the
circuit judge appointing them, and when audited by the cir-
cuit judge to be paid in the same manner that jurors and wit-
nesses in state cases are paid." The ascertainment and pay-
ment of both jurors and witnesses in state cases are expressly
and in terms regulated by sec. 2560, Stats. 1898, as to jurors,
and sec. 4060 as to witnesses, which provide for the issue of
a certificate to each by the clerk of court, and direct that
"thereupon the county treasurer shall pay the amount thereof

out of the county treasury." The directions as to payment are
in identical words as to both. It cannot be doubted, and, in-
deed, respondents do not question, that these sections are re-
ferred to and made a method of payment of the expenses under
sec. 1077a, so that, upon presentation of proper certificates of
their audit, they are to be paid by the county treasurer out of
the county treasury. It is contended further, however, that
such certificates must also be received by the town treasurers
for county taxes by virtue of sec. 1091, Stats. 1898, which pro-
vides that "county orders and jurors' certificates shall be re-
ceivable for taxes in the county where issued, and shall be
allowed the treasurer on settlement of such taxes." This con-
tention is at once met by the very strong presumption, already
mentioned, against a legislative purpose to interrupt or dis-
arrange public finances unless that purpose be clearly and
unambiguously expressed. Apart from this, however, many
other considerations suggest improbability that the legislature
intended to make applicable any provisions other than those
of secs. 2560 and 4060. Those are the only ones which con-
trol alike jurors and witnesses. From the conjunctive associa-
tion of these two classes of fees in sec. 1077a, it is inferable
that the legislature referred to some method of payment com-
mon to both, if any common method existed. A mode of
payment prescribed for jurors, but not applicable to witnesses,
would not be the manner in which jurors *and* witnesses are
paid. The adoption of variant or alternative methods would
ordinarily be accomplished by the disjunctive "either" or
"or." If it can be said that jurors are paid by acceptance of
their certificates in discharge of taxes, yet witnesses are not
authorized to be so paid, and to allow such privilege to these
expenses would permit their payment otherwise than are state
witnesses, in defiance of the restriction implied in sec. 1077a,
by application of the rule, expression of one excludes all
others—a rule specially cogent in construing statutes author-
izing use of public moneys. Sec. 1091 accords the privilege

·of tender for county taxes only to county orders and jurors' ·certificates. Clearly, certificates of these expenses are neither. It matters not if they are absolute county obligations, as re- ·spondents contend, for there are equally absolute obligations other than those expressly made receivable for taxes by that section, which by that very expression are excluded from the privilege—notably witnesses' certificates, court costs taxed on change of venue, county bonds and their coupons, and prob- ably others. Reason for such discrimination by the legislature need not be discoverable by the court, but in the present in- ·stance is obvious. Interception of the revenue which the ·county has provided for the performance of its duties need not cause serious inconvenience if the maximum thereof can be foreseen with reasonable certainty. County orders cannot be issued in excess of the tax actually levied, and can be con- trolled in amount by the county officers. Jurors' fees, while not under the control of the county board, can, from experi- ence, be estimated with much of certainty. On the other hand, expenses such as these may come unexpectedly in volume to so exhaust the revenue as to paralyze county government.

Another consideration significant of the legislative intent is, that secs. 2560 and 4060 are the only ones which relate to *payment* of jurors and witnesses, either in terms or in the primary, accurate, and most usual meaning of that word. "To pay" means primarily to transfer or deliver money or other agreed medium from the debtor to the creditor; and while the word "payment" is often used merely to signify satisfaction or discharge of an obligation by any means, as by setting off some other or the like, as in *Marinette v. Oconto Co.* 47 Wis. 216, 2 N. W. 314, that is a secondary and some- what loose use of the term. Payment, of course, works satis- faction of an obligation; but the two are not equivalents, for satisfaction and discharge may be accomplished without pay- ment. *Bronson v. Rodes,* 7 Wall. 229, 250; *Milwaukee M. Ins. Co. v. Russell,* 65 Ohio St. 230, 62 N. E. 338; *Claflin &*

*Co. v. Continental J. Works,* 85 Ga. 27, 43, 11 S. E. 721;
*Hathaway v. Davis,* 33 Cal. 161, 166; *State v. Haun,* 7 Kan.
App. 509, 54 Pac. 130; *Manice v. H. R. R. Co.* 3 Duer, 426,
441; *Lindsay v. Fay,* 28 Wis. 177; *Becker v. Chester,* 115
Wis. 90, 123, 91 N. W. 87, 650. Further, the same word
used several times in statutes *pari materia* is ordinarily pre-
sumed to have the same significance. The only places where
our statutes provide the manner in which jurors and witnesses
shall be "paid," using that word, are in secs. 2560, 4060.
Hence, when sec. 1077a refers to the manner in which such
fees are "paid," there is at least *prima facie* presumption that
only those sections are referred to. Since they fully satisfy
the reference, and provide a complete scheme for payment in
a sense not only reasonable but accurate, we think it would
defy all canons of construction to extend the reference in sec.
1077a to include a privilege which, as already shown, is not
payment in the accurate or most probable sense of that word,
which does not satisfy the calls of the statute by applying to
both witnesses and jurors, and which would seriously disturb
and perhaps paralyze public business.

For these reasons we have reached the conclusion that no
statute authorized the town treasurers to receive these so-called
certificates in payment of taxes, or to be allowed credit for
them in performing the legal duty of payment to the county
treasurer; hence that judgment must go against the defend-
ants. Since it may, perhaps, be that parties not now before
the court may be interested in the ultimate question of the
county's liability for these expenses, we refrain from consid-
eration of any other of the numerous positions discussed, as
to which no opinion is intended to be suggested by any expres-
sions hereinabove used.

The town treasurers, having returned officially that the
county taxes are actually paid to an amount exceeding what
they settled for in the sums represented by these certificates,
without in any way indicating those individual taxes in satis-

Oneida Co. v. Tibbits, 125 Wis. 9.

faction of which they accepted the certificates, are in no position to deny that they have received all the taxes so returned as paid, at least as between themselves and the county. A portion of such paid taxes, equal to the face of the certificates, they have failed to settle for. Clearly, therefore, they fall within the predicament described in sec. 1117, Stats. 1898, and, with their sureties, are liable for the penalty and interest by that section imposed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment as demanded by the complaint.

The appellants moved to modify the mandate, and the respondents moved for a rehearing.

The appellants contended, *inter alia,* that, the court having decided defendants liable for the penalty and interest imposed by sec. 1117, Stats. 1898, the court erred in directing judgment to be entered therefor, asserting that the prayer for relief demanded more, viz., the money withheld together with five per cent. damages and ten per cent. interest from the day payment should have been made on the balance of unsettled taxes due from the town treasurer, together with ten per cent. damages and ten per cent. interest from the time the town treasurer failed, *on demand,* to pay over the public moneys collected and received by him.

The motions were denied, and the following amendment to the mandate was filed, on May 2, 1905:

*By the Court.*—The judgment and mandate of this court rendered March 14, 1905, is now amended so as to read as follows, viz.:

Judgment reversed, and cause remanded with directions to enter judgment in favor of plaintiffs and against all the defendants for the sum of $1,500, together with five per cent. damages and interest at the rate of ten per cent. per annum from March 15, 1902, as also for costs.