LOWREY, Respondent, vs. FINKLESTON, imp., Appellant.
SAME, Appellant, vs. SAME, Respondent.

*January 12—April 23, 1912.*

*Deeds: Condition subsequent: Breach: Re-entry by grantor: Equity: Remedies: Removal of cloud on title: Ejectment: Agreement for personal services: Deed construed: Recording: Constructive notice of condition: Mortgages: Accounting: Appeal: Remanding case for statement of account.*

1. A grantor of land who has re-entered and is in actual possession thereof after breach of a condition subsequent may maintain an action in equity to set aside the conveyance as a cloud on his title, and need not sue in ejectment.
2. Where a conveyance and lease were made subject to the performance by the grantee and lessee of an agreement to make certain payments and render certain services, some of which were of a personal nature and founded in the close relations existing between the parties, his death in the lifetime of the grantor and prior to full performance of such personal services entitled the grantor to treat the condition as broken, and she was not bound to carry out the contract with his legal successors.
3. The words "heirs, executors, administrators, and assigns" in the *habendum* clause of the deed and lease would not alter the case, where no such words appear in the condition.
4. Where a substantial part of the agreement upon which a conveyance and lease are made is the performance of certain services to the grantor during her natural life, and the instruments provide that upon a failure of performance at any time the grantor

may declare the same void and may enter upon and repossess the premises, the agreement will be treated in equity as a condition subsequent, and, if substantially broken through failure of the grantee to perform, the conveyance and lease will be set aside.

5. In such a case equity takes jurisdiction, not to forfeit a title, but to quiet a title already forfeited for breach of the condition.

6. Where a conveyance containing a condition subsequent is duly recorded, such record is constructive notice to a subsequent mortgagee of the premises, who can acquire no greater rights than the grantee; and the same is true of creditors of the grantee.

7. Where a grantee of land subject to an agreement constituting a condition subsequent, a substantial part of which was the rendition of personal services, mortgaged the land and thereafter died insolvent, and his administratrix and heirs surrendered the land to the grantor, the mortgagee was entitled in equity to an accounting and to have a lien upon the land for the excess, if any, of moneys paid and articles furnished by such grantee, over the rental value of the land, together with interest on the amount of such excess paid each year from the time of payment to the date of the judgment.

8. Under the facts and circumstances of this case, such mortgagee was also entitled to an equitable lien for the amount of the dividend she would have received had she filed her claim against the mortgagor's estate, she having declined to file such claim in the belief that her mortgage was valid.

9. The fact that the amounts expended by the grantee of the land were paid out in the performance of his agreement would not bar his estate from being allowed therefor in an equitable accounting, since by the grantee's death the grantor became entitled to a rescission and restoration to her former rights. *Morgan v. Loomis*, 78 Wis. 594, distinguished.

10. Upon appeal in such a case, this court, being unable to ascertain with accuracy from the record the amount of the excess of annual payments over the rental value, or the amount due upon the mortgage at the time of judgment, remands the case for a statement of the account by the trial court in accordance with the opinion of this court, to the end that, if necessary, additional testimony may be taken.

APPEALS from a judgment of the circuit court for Iowa county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed on plaintiff's appeal; reversed on defendant's appeal.*

This is an action to set aside a deed and a lease of real estate executed September 11, 1900, by the plaintiff, a lady then nearly eighty years of age whose husband had died about one year before. The deed covered 180 acres and the lease 260. The conveyance was made to one Jones upon certain conditions named in the deed. Jones died about eight years after the conveyance, insolvent, having before his death executed a mortgage upon the 180 acres deeded to him to one Finkleston, who afterwards died and the mortgage was assigned to his widow. *Mary Finkleston,* the heirs at law of James Jones, and numerous of his creditors as well as his administratrix were made parties defendant. The defendant *Mary Finkleston* answered by admissions, denials, and special matter.

The court found substantially as follows: That on and prior to the 11th day of September, 1900, plaintiff was the owner of the lands in question and a resident of Iowa county, Wisconsin; that on the 11th day of September, 1900, plaintiff made and entered into an agreement in writing with one James L. Jones, by the terms of which plaintiff conveyed to Jones 180 acres and leased 260 acres during the natural life of the plaintiff, such conveyance and lease being in consideration of the payment of $500 in two semi-annual payments during the natural life of the plaintiff, and also the delivery to plaintiff during her natural life of certain vegetables, firewood, horse feed, and also the care of and hitching up and unhitching of a horse for the plaintiff, and payment of taxes assessed upon the land in question; and it is provided in such conveyance and lease that if the said Jones, second party, shall fail faithfully to keep all of the said covenants, conditions, and agreements, the instrument shall be utterly void and of no effect, and plaintiff, first party, shall have the right to declare it void and enter upon, use, enjoy, and own all of the lands covered by such conveyance and lease; that said agreement was executed in the presence of two subscribing witnesses, duly acknowledged and recorded in the office of the register of

deeds for Iowa county on the 22d day of September, 1900; that said Jones entered into possession of the premises and remained in such possession until the 22d day of October, 1907, at which time he died; that thereafter letters of administration were duly granted to the defendant Laura E. Jones, widow of deceased, who duly qualified as such administratrix; that a large number of claims were filed and allowed against the estate of said Jones, deceased, and it became necessary to sell the real estate owned by said James L. Jones to apply upon such indebtedness; that said James L. Jones, deceased, left surviving him the defendant Laura E. Jones, his widow, and the following children, defendants in this action, to wit: Gwen Lloyd Jones, Maud Lloyd Jones, Scott Lloyd Jones, Charles Lloyd Jones, Rebecca Lloyd Jones, Esther Lloyd Jones, and Thomas Clark Lloyd Jones; that the summons and complaint were duly served upon all defendants and that none appeared except the answering defendants; that the defendants herein, except the widow and heirs of said James L. Jones and *Mary Finkleston,* are creditors of said Jones, whose several claims were filed and allowed by the county court on the 10th day of November, 1908; that said James L. Jones failed to render to plaintiff his personal service set forth in the agreement above referred to and was in arrears upon certain payments due thereunder at the time of his death; that at the time of the execution of this agreement plaintiff was nearly eighty years of age, living alone upon the farm in question; that her husband had died about a year previous and all of her grandchildren and children had left her; that James L. Jones had been an intimate friend of plaintiff all his life and had come to be regarded almost as a son, both by plaintiff and her husband; that plaintiff was anxious to make provision for her declining years, and to secure the care and attention of said Jones during that time, and to secure such care and attention, and in consideration of the love and affection which plaintiff had for said Jones, she and said Jones en-

tered into the aforesaid agreement; that said Jones failed to make payments which fell due in October, 1907; that he did not furnish the vegetables agreed to be furnished; that he never took care of plaintiff's horse, did not keep her conveyance in order, and did not hitch up and unhitch her horse as agreed; that after the death of said Jones, his widow, Laura E. Jones, who was administratrix of his estate, attempted to carry out the provisions of the agreement, but in September, 1908, surrendered to plaintiff the copy of said agreement and notified plaintiff that it was impossible for her and her family to carry out the provisions of the contract, and that she as his widow and administratrix of his estate, and the heirs at law of said Jones, joined in such surrender and thereupon released and abandoned all claim to the land in question and have since made no attempt to perform the conditions of the agreement; that thereupon plaintiff entered into and took actual possession of all of said lands under the provisions of said deed and agreement and has since been in such possession, and whatever interest said Jones had under the deed reverted to plaintiff because of the breach of the conditions of the deed, the widow of Jones and heirs disclaiming any right or interest therein; that said James L. Jones and Laura E. Jones, as administratrix of his estate, occupied said premises eight years and paid to the plaintiff during that time under the agreement as rent $3,940; that Jones permanently improved the land by killing quack grass and grubbing to the amount of $300; that hay, oats, and corn were furnished for plaintiff's horse according to the agreement of the value of $600, also firewood worth about $160, and said Jones paid $864.78 taxes on the premises; that the fair rental value of the premises during the time occupied by Jones and his administratrix was $4,000; that said Jones should be credited upon a full accounting with $5,864.78 and should be charged with $4,000, reasonable rental value of this land; that on January 3, 1905,

James L. Jones and wife executed to one D. J. Finkleston, husband of *Mary Finkleston,* defendant, a note for $5,000, secured by mortgage on the land deeded to Jones; that D. J. Finkleston died about the same time as James L. Jones and the defendant *Mary Finkleston* became the owner of said note and mortgage, no part of the principal of which has ever been paid and no interest since January 3, 1908, and there is now due on said mortgage and note to defendant *Mary Finkleston* $5,000 and interest; that said mortgage was duly recorded, but plaintiff had no knowledge of its existence until after the commencement of this action; that there is no proof that the moneys received by James L. Jones from the mortgage loan were used to any extent for the benefit of the plaintiff or to enable said Jones to continue to make payments to plaintiff; that the failure of the administratrix to comply with the terms of the agreement was not due to any collusion or agreement between said administratrix and plaintiff or between plaintiff and other persons; that the plaintiff always regarded the conditions of the deed as personal services to be rendered by James L. Jones and that she has never been willing to allow any one to come in and take his place in performing the same; that the material allegations of the complaint are proven and true, and that the material allegations of defendant's answer are not established by the proof.

As conclusions of law the court found that said agreement between plaintiff and James L. Jones should be canceled, set aside, and held for naught; that each defendant, with the exception of *Mary Finkleston,* be forever barred from asserting or having any right, title, claim, interest, or demand in or against said premises, and that the title and possession of plaintiff be declared legal and lawful; that defendant *Mary Finkleston* be adjudged to have an equitable lien upon the part of the premises described in her mortgage for the sum of $1,864.78, with interest at six per cent. since the commence-

ment of this action, February 18, 1909, and that all other right, title, or claim which she has or may have against said premises be forever barred; that plaintiff shall pay the sheriff's and clerk's fees in this action; neither party to recover costs from the other.

Judgment was entered in accordance with the findings of fact and conclusions of law, from which the defendant *Mary Finkleston* appealed. The plaintiff also appealed from that part of the judgment granting relief to the defendant *Mary Finkleston.*

For the defendant *Mary Finkleston* there were briefs by *Grotophorst, Evans & Thomas,* and oral argument by *Evan A. Evans.*

For the plaintiff there was a brief signed by *Spensley-McIlhon & Priestley* and *C. F. Osborn,* and oral argument by *Mr. Osborn* and *Mr. T. M. Priestley.*

The following opinion was filed January 30, 1912:

Kerwin, J. The facts in this case, except in some minor detail, are covered substantially by the findings of fact set forth in the statement of the case. We shall first treat the appeal of the defendant *Mary Finkleston.* Counsel claims that the proper remedy of plaintiff was at law in ejectment and that she cannot maintain the present action in equity, relying upon *Mash v. Bloom,* 130 Wis. 366, 110 N. W. 203, 268. The plaintiff insists that this point was waived by defendant. But whether it was or not is of no consequence, because plaintiff was in possession when she commenced the action; therefore, upon well established principles, her action was properly grounded in equity to set aside the conveyance and lease for breach of condition subsequent and remove the cloud from plaintiff's title.

Defendant further contends that neither in an action at law nor in equity should the court have set aside the convey-

Lowrey v. Finkleston, 149 Wis. 222.

ance, for the reason that the evidence does not warrant judgment in plaintiff's favor, because it is insisted (1) that the contract was fully carried out by James L. Jones during his lifetime; and (2) that it could have been carried out by the estate for the benefit of the estate. But on the first point the evidence and the findings of the court below as well are against the defendant. As to the second point, the condition subsequent being personal in its nature and being exclusively with James L. Jones, the plaintiff was not bound to carry out the contract with the successors of Jones, and moreover, after an attempt by the administratrix to carry out the terms of the agreement, she concluded she could not do so and voluntarily surrendered it. The conveyance was made on the faith of James L. Jones performing the conditions named in the contract, some of which were to render her personal services, and principally because of the close relation existing between her and Jones. Some argument is made by counsel for defendant to the effect that the terms of the condition upon its face show that it contemplated performance not alone by Jones, but "his heirs, executors, administrators, and assigns," therefore the contract was not considered a personal one. An examination of the contract will show that while the *habendum* clause, both in the lease and conveyance, contained the words "heirs, executors, administrators, and assigns," no such words appear in the condition, but on the contrary the agreement as to performance of the conditions is expressly between plaintiff and James L. Jones, and he personally and individually was bound to perform such conditions on his part. So there is nothing whatever in the terms of the instrument which indicates any purpose to make the condition otherwise than personal.

The contract, after providing the conditions to be performed by Jones personally, provides further that if said Jones shall at any time during the natural life of the plaintiff

fail faithfully to keep and perform it and all the said cove-
nants, conditions, and agreements, then the instrument shall
be thenceforth utterly void and of no effect, and the plaintiff
shall have the right to so declare it and at once thereafter en-
ter upon, use, enjoy, and own all of the lands and premises in
the same manner in all respects as if the instrument had never
been made.    It appears, therefore, that a substantial part of
the consideration was the agreement on the part of Jones to
render to plaintiff personal services.    In such case the agree-
ment will be treated in equity as a condition subsequent, and,
if substantially broken through failure of the grantee to per-
form, the conveyance will be set aside.    *Wanner v. Wanner,*
115 Wis. 196, 91 N. W. 671; *Glocke v. Glocke,* 113 Wis. 303,
89 N. W. 118; *Gall v. Gall,* 126 Wis. 390, 105 N. W. 953.
As said by this court in *Glocke v. Glocke, supra,* courts of
equity take jurisdiction in such cases not to forfeit a title,
but to quiet a title already forfeited for nonperformance of
a condition subsequent, and, to the end that a conditional
grantor's remedy may be complete, it will cancel all writings
and records which might otherwise be used presently or in the
future to his prejudice.    The question has so often been be-
fore this court that any extended discussion of the principle
involved would seem unnecessary.    After it has been estab-
lished, as in this case, by the findings of the court below, well
supported by the evidence, that the agreement between the
parties was personal in its nature, at least in a substantial
part, the right to have the conveyance set aside and the grantor
restored as near as may be to her former rights follows.

It is claimed, however, that the setting aside of the convey-
ance operates as a fraud upon *Mary Finkleston,* therefore a
court of equity ought not to lend its aid to plaintiff under the
circumstances.    But it is sufficient to say in this regard that
the agreement between plaintiff and Jones was a matter of
record, therefore constructive notice to Finkleston when he

took his mortgage.   He got no greater rights by his mortgage
than Jones had.   This he was bound to know whether he had
actual knowledge of the record of the instrument between
plaintiff and Jones or not.   The same is true as regards the
creditors of Jones, who were made defendants, but who are
not complaining here.   *Bishop v. Aldrich,* 48 Wis. 619, 4
N. W. 775; *Jewell v. Reddington,* 57 Iowa, 92, 10 N. W.
306; *Quatman v. McCray,* 128 Cal. 285, 60 Pac. 855; *East-
man v. Batchelder,* 36 N. H. 141; *Ridley v. Ridley,* 87 Me.
445, 32 Atl. 1005; *Clinton v. Fly,* 10 Me. 292.

It is further contended by defendant that there was no
proper accounting, and that *Mary Finkleston* should have a
lien upon the real estate in question for a larger amount than
that given by the court below, and counsel suggests that this
amount should be increased by interest on the excess each
year between the amount paid by Jones and the amount of
rental value, and states that the amount is $233.09, and ar-
gues that this amount was paid each year on the basis that
there was $733.09 paid annually, while the rental value was
but $500, leaving a balance in favor of Jones of $233.09, and
that the owner of the mortgage, *Mary Finkleston,* is entitled
to interest on this balance from the time such amount was
paid, and he estimates the amount due to be $2,259.78 by
the addition of this interest, instead of $1,864.78 as found by
the court.   We think the principle contended for by counsel
is correct, but we do not see how he arrives at the exact
amount of $233.09 as a basis for interest each year, beginning
September 10, 1901.   This conclusion of course presupposes
that the payments made each year by Jones were identical,
not only for taxes, but other items required to be furnished
and services performed.   Perhaps it may be said that, aside
from taxes, the other items paid and furnished, namely, hay,
oats, corn, and firewood, were the same each year, but it ap-
pears from the record that the taxes varied, and very materi-

ally.   For example, the taxes paid, as appears from the record, were as follows:

| | |
|---|---:|
| 1899 | $67 60 |
| 1900 | 61 44 |
| 1901 | 76 90 |
| 1902 | 87 72 |
| 1903 | 86 92 |
| 1904 | 89 36 |
| 1905 | 143 76 |
| 1906 | 152 46 |
| 1907 | 125 94 |
| 1908 | 99 72 |
| Aggregating | $991 82 |

It seems the amount of taxes paid, as found by the court, conceded to be correct by counsel for appellant, and not sufficiently excepted to, is $864.78.   We are unable to understand the inconsistency, from the record.   But in any event, whether the amount of taxes paid be $864.78 or $991.82, it is clear that the annual payments would not be the same, so the appellant's theory of casting interest on the sum of $233.09 as the sum paid each year more than the rental value would not be a correct method.   The amount of excess paid each year over and above the rental value should be ascertained as near as may be and interest cast upon that amount from the time of payment to the date of the judgment, and the aggregate of these several sums added to $1,864.78.

There is also another item which should be added to the amount of the *Finkleston* equitable lien, namely, the percentage which she should have received had she filed her claim against the Jones estate, which she declined to do believing her mortgage to be valid.   The percentage paid to creditors on claims filed, as appears from the record, was between thirty and thirty-one per cent.   It is obvious, however, that had the *Finkleston* claim under the mortgage been filed the percentage would have been reduced, and of course she would only be entitled to such reduced percentage, because her claim would increase the liabilities, thereby reducing the percentage.   We

have been unable to discover from the record what interest the *Finkleston* claim bore, therefore cannot determine the amount due upon the mortgage at the time of judgment. But whatever that amount may be, it was entitled to be filed against the estate and participate with other claims filed. Notwithstanding that it was not filed, and in view of the facts in this case on this equitable accounting, such amount should be charged against the land in question. In view of the condition of the record, we deem it best to remit the case for a statement of the account by the court below in accordance with this opinion, to the end that, if necessary, additional testimony may be taken.

It is further claimed by counsel that the finding of $300 for permanent improvements was not sufficient and that the amount should be larger. But we think this finding must stand, not only because it is supported by the evidence, but because there is no sufficient exception to it.

On the plaintiff's appeal it is insisted that the amount for which *Mary Finkleston* is given an equitable lien is too large, and that the credits allowed to Jones, aggregating $5,864.78, should not have been allowed, with the exception of the $300 for permanent improvements. This contention is based upon the idea that, since Jones paid these amounts in carrying out his contract, he is not entitled to credit for them after termination of the contract, and this upon the ground that he had not kept his contract, therefore could not be allowed for amounts paid during the performance of it and before breach by him. The plaintiff's contention is based upon *Morgan v. Loomis*, 78 Wis. 594, 48 N. W. 109, which counsel claims is directly in point. We cannot think, however, that that case is controlling. There the breach was wholly by the grantee, while in the case before us the death of Jones entitled plaintiff to rescission and restoration to her former rights, therefore no reason is apparent why in an equitable accounting, under the circumstances of the case, the Jones estate should not be

credited with the amounts paid out under the contract in question. We therefore hold that the judgment should be modified on the defendant's appeal by giving the defendant *Mary Finkleston* an equitable lien upon the land for the same percentage on the amount due on her mortgage at date of judgment that the general creditors would have received on their claims had her claim been filed; also the difference between the rental value of the land, $4,000, and the amount paid under the conveyance, together with interest on the excess paid each year over amount received such year from time of payment to date of the judgment below.

*By the Court.*—The judgment of the court below is affirmed on plaintiff's appeal and reversed on defendant's appeal, and the cause remanded with directions to the court below to award the defendant *Mary Finkleston* an equitable lien for the amount which may be found due upon a proper accounting as indicated in this opinion.

Upon a motion by the plaintiff for a rehearing there was a brief by *T. M. Priestley* and *C. F. Osborn* in support of the motion, and a brief by *Grotophorst, Evans & Thomas* in opposition thereto.

The motion was denied April 23, 1912.