KRAHN and another, Respondents, vs. GOODRICH, Appellant.

*December 5, 1916—January 16, 1917.*

*Appeal: Review: Findings of fact by trial court: Value of land: Conveyance in consideration of future support, etc.: Construction: Personal obligation of grantee: Agreement to pay money to third persons: Condition precedent as to payment of debts of grantor: What constitutes payment: Lien on land: Nonperformance of condition.*

1. The rule that a finding of fact made by a trial court will not be disturbed on appeal unless contrary to the clear preponderance of the evidence does not mean that such finding must necessarily be sustained if there is some evidence which, if not controverted, would support it.

2. The evidence in this case is *held* clearly to preponderate against a finding by the trial court that a certain farm was worth $4,000 in 1897, and to show that it was worth not more than $2,500—probably about $2,200.

3. A farm was conveyed to the grantors' son-in-law upon certain "terms and conditions" relating to the support, maintenance, and payment of indebtedness of the grantors, and providing "that in case of the payment of $1,000 indebtedness by [the grantee] at the end of ten years he shall pay to the three children of [the grantors] $300 in annual payments of $1,000 each." A few days afterwards said grantors by a lease gave to the son-in-law the use of about $1,000 worth of personal property during their lives upon condition that he remain upon the farm and in all things perform the contract contained in the deed thereof to him, and in case he so remained during their lives and fully performed said contract the title to the personalty was to vest absolutely in him. *Held,* that the obligations so assumed by

the son-in-law were personal on his part and could not be passed on to a vendee, and that any shifting of the responsibility would be a breach of the condition of the conveyance.

4. The purpose of the whole transaction was that the entire property, real and personal, should be kept intact for the protection of the grantors so long as they, or either of them, should live; otherwise that the property should revert to them.

5. The condition precedent, performance of which was essential to give vitality to the provision, in the deed of the farm, for the three children of the grantors, was the payment of $1,000 of the grantors' debts by the son-in-law personally—not by any one else or by using the property therefor.

6. The word "pay" as used in the deed was intended to have its ordinary meaning, which is to discharge an indebtedness by the use of money. It meant an actual extinguishment of indebtedness, relieving the property from the incumbrance thereof, not a mere change in form or of creditors, leaving the property burdened as before, nor a discharge of the indebtedness by using the property therefor. The condition precedent in this case was, therefore, not satisfied by the son-in-law taking up an old mortgage indebtedness and giving a new mortgage on the land, nor by his transfer of the land to his mother-in-law and her transfer to another person.

7. The conveyance of land by deed on condition that the grantee pay to a third person a specified sum of money, and acceptance of such conveyance, create a lien upon the land in favor of such third person; but where the payment is made contingent upon a condition precedent, the lien is likewise contingent, and if the time limited for such precedent event to occur expires without its happening the possibility of the lien ripening into an absolute interest no longer exists.

8. If one person, for a consideration moving to him from another, agrees to pay a sum of money to a third person, the law creates the essential of privity between him and the third person, making a binding contract between them which cannot be impaired by any subsequent agreement between the two persons first mentioned without the third person's consent; but where the promise to pay is conditional it will wait upon the condition being satisfied, and if the time set therefor lapses without such satisfaction occurring the promise falls with it.

9. The contingent provision in the deed that the grantee should pay "to the three children of [the grantors] $300 in annual payments of $1,000 each" never having become operative, it is unnecessary to determine whether that provision is void for uncertainty, or whether the trial court correctly construed it as meaning that

$100 was to be paid to each of said children on April 19, 1907, and the same amount annually thereafter until each should receive $1,000.

10. Other questions also as to whether the rights of the three children had been extinguished by the statute of limitations, or had become unenforceable through laches, and as to whether one to whom the farm had been conveyed should have a lien thereon for the value of improvements made by him superior to any claim of the children, are not decided.

APPEAL from a judgment of the circuit court for Sauk county: JAMES O'NEILL, Judge. *Reversed.*

Action to enforce a lien on real estate. The issues were decided as the following abridgment of the findings indicates:

(1) April 19, 1897, Gottfried Schiefelbein owned the southeast quarter of the southeast quarter of section 1, town 12, range 3 east, in Sauk county, Wisconsin. (2) July 5, 1883, defendant owned and sold on land contract to said Schiefelbein the west one-half of said southeast quarter, agreeing to deed the same to him on payment of $1,600 and interest as specified, and the vendee was thereafter in possession until said April 19th. (3) Schiefelbein died March 4, 1898, leaving a widow, Henrietta Schiefelbein. (4) April 19, 1897, Schiefelbein owed a mortgage indebtedness of $400 on the first mentioned lands and $1,600, principal and interest, on the other land. (5) On said day, he and his wife deeded said lands to their son-in-law, Frank Mittelstadt. (6) Schiefelbein left four children: Louise Mittelstadt, *William Schiefelbein,* Ida Oust, and *Amelia Krahn,* who were alive April 19, 1897. (7) The deed aforesaid contained this:

"Upon the following terms and conditions—That said 2 party is to pay to first part the sum of one hundred dollars annually in case of death of the wife of 2nd part, and 1st party shall not reside with 2 party. Otherwise the sum of $25 shall be payable annually Dec. 1st so long as 1st parties

or either of them shall live. Said 2nd party also is to pay off and discharge all indebtedness of first parties. He is also to furnish to first parties or the survivor of them with a comfortable place to live, to furnish to them with proper and sufficient provisions, with proper care and all medical treatment for them or either of them so long as they or either of them shall live and to the survivor of them and on their death to pay all necessary funeral expenses for them. That in case of the payment of $1,000 indebtedness by 2 part at the end of ten years. He shall pay to the three children of 1st party $300 in annual payments of $1,000 each."

(8) When the deed was made, Schiefelbein owed, in addition to the indebtedness aforesaid, $100 to Ferdinand Garske and $40 of small bills. Mittelstadt paid the bills, the mortgage indebtedness, and the $100, soon after he took the property. He continued in possession until September 15, 1899. (9) At the date of such deed the property was worth $4,000. (10) September 15, 1899, the grantee and his wife quitclaimed the land to Mrs. Schiefelbein. (11) September 19, 1899, she conveyed the land to defendant. (12) After the date of the deed to Mittelstadt the grantors conveyed to him unincumbered personal property, of the agreed value of $944. (13) April 19, 1897, Ida Oust was fourteen years old and *William Schiefelbein* twenty-three. (14) In 1906 Ida Oust conveyed her interest in said lands to plaintiffs. (15) The three children mentioned in the first deed were Ida and plaintiffs. (16) That was conceded in the answer where it was alleged that if Mittelstadt should pay $1,000 of his grantor's indebtedness, he should pay to Ida and plaintiffs $300 in sums of $100 annually. (17) It was intended by the deed agreement that said Frank Mittelstadt, his heirs or assigns should pay said three each $1,000, $100 to each April 19, 1907, and the same annually thereafter until each should receive $1,000. (18) The value of their lien, April 19, 1897, was $1,289.58. (19) The words "annual payments" and "$1,000 each"

make impossible a construction that only $300 was to be paid each person. (21) Over $1,000 of indebtedness was paid under the deed to Mittelstadt before the ten years. Six hundred dollars were paid within two years and the obligation to defendant on the land contract was discharged. (22) When the deed was made to Mittelstadt, Schiefelbein thought he would not live long. (23) The deed was recorded April 19, 1897. (24) Plaintiffs knew nothing of the conveyance by Mittelstadt until after the transaction. (25) Ida Oust did not know of such conveyance, or the one to defendant, until after they were made. (26) Plaintiffs are not estopped to assert their claim under the deed to Mittelstadt. They have continuously asserted it. No money became due them until April 19, 1907. After learning of the deed mentioned in (25), they asserted their rights and have never ceased doing so. (27) Ida Oust never waived or became estopped from asserting her rights. (28) Defendant did not at any time dispute the claims aforesaid; but sought to buy them up. (29) His possession has always been subject thereto. (30) He had notice of the claim of Ida Oust by the record of her deed to plaintiffs April 19, 1897. (31) He has had the use of the land from the date of his deed at which time seventy acres were under cultivation. (32) The rental value to September 19, 1904, was $100 per year and thereafter has been $200 per year. (33) Since he took possession, he has made permanent improvements of the value of $1,100.90. (34) He has paid $825.58 for taxes and insurance. (35) The amount due defendant on the land contract when he obtained his deed was less than on April 1, 1897. (36) He did not assume or agree to pay plaintiffs' claims. (37) They are entitled to interest at six per cent. on $300 from April 19, 1907, and the same on subsequent payments from their due date. (38) Defendant took possession of the property with notice of the claims aforesaid, and has never evinced to plaintiffs that his pos-

session was hostile thereto. (39) The amount Mittelstadt agreed to pay for the land is not more than $2,473.

From such findings these conclusions were reached: (1) Plaintiffs have a lien on the lands for $3,000 and interest, subject to a prior lien in favor of defendant for $2,473. (2) Nine annual payments of $300 each have become due, commencing with April 19, 1907, and each draws interest as indicated in the findings. (3) They are entitled to enforce such lien by foreclosure and sale of the property. There were other conclusions as to details of the judgment and its execution and that plaintiffs were entitled to costs.

Several requests to find were made on behalf of defendant which were not embodied in the foregoing and due exceptions were taken to the refusal in respect thereto, and to many of the findings which were made.

The evidence was to the effect that the so-called conveyance of personal property was made nine days after the date of the deed and in the form of a lease to Frank Mittelstadt to have the use and benefit of the property during the life of the lessor, conditioned upon the lessee remaining upon the premises conveyed by deed and in all things fulfilling his contract therein contained and in case of his removing from such premises or failing to perform such contract that he should deliver to the lessor and his wife, or the survivor of them, all said property or account for and pay over that part not so delivered at the specified value, and that in case of full performance of said contract by said lessee and his remaining on the premises so long as the lessor and his wife, or either of them should live, the title to said property should vest absolutely in him, his heirs and assigns, he to have permission in the meantime to sell any of such property upon condition of replacing the same or paying the proceeds to the lessor and his wife, or the survivor of them.

Judgment was rendered according to the conclusions above indicated.

For the appellant there was a brief by *James A. Stone,*
*Henry M. Winchester,* and *Olin, Butler, Stebbins & Stroud,*
and oral argument by *Mr. Byron H. Stebbins* and *Mr. Stone.*

For the respondents there was a brief by *Chas. H. Stone*
and *Grotophorst & Thomas,* and oral argument by *H. H.*
*Thomas.*

MARSHALL, J.    Many interesting questions are presented
for consideration here, but, as what follows will show, we
have not been able to proceed far before reaching an insuper-
able infirmity in the judgment.

Serious objection is made to the findings as a whole; but
it does not seem necessary to deal therewith.   We will con-
sider only such features as seem to shed some light on the
vital point to which we have referred and the features di-
rectly involved therein, some of which are not really findings
of fact, though harmlessly classed as such.

The finding that the farm was worth $4,000 on the 19th
of April, 1897, when it was conveyed to Frank Mittelstadt,
doubtless, had a very important bearing on several other im-
portant points in the case.   It is insisted that such finding
is manifestly contrary to the clear preponderance of the evi-
dence and, though contentions of that nature seldom require
reference to the evidence in detail, the one here seems to be
a rather striking exception, indicating that the conclusion
was reached without appreciating the weakness of the basis
for it.

The rule that findings of fact made by a trial court will
not be disturbed unless contrary to the clear preponderance
of the evidence, giving due weight to the superior advantages
below for discovering therefrom, in the light of appearance
on the trial, the real truth of the matter, as has often been
said, is a very important one in the administration of jus-
tice; but care must be constantly exercised not to treat such

findings so lightly as to really classify them with jury find-
ings.   It must be appreciated that there is some difference
as to the former, requiring the evidence on each side to be
weighed and probabilities to be put against probabilities, suf-
ficiently to determine whether those on one side so manifestly
outweigh those on the other as to clearly answer to the call
for that clear preponderance essential to disapproval of the
result complained of.   The logic of the rule contemplates
that a finding is not, necessarily, to be sustained merely be-
cause there is some evidence which, if not controverted, would
support it.

The finding in question rests on the evidence of two wit-
nesses; one being a plaintiff and the other a person who, evi-
dently, was personally friendly to plaintiffs and unfriendly
to defendant, which circumstances have a material bearing
on their credibility.   Furthermore, neither of the witnesses
qualified to testify by showing, affirmatively, that he knew
the fair market value of the property in 1897, either by ref-
erence to actual sales of similar property, or otherwise, and the
evidence as a whole, is quite barren of circumstances of a cor-
roborating nature.   Opposed thereto there is evidence of four
witnesses who were, apparently, unprejudiced in the matter
and so circumstanced as to be specially credible.   One had
known the place for forty-five years and lived close by it for
some twenty years; one had lived near the place for some
thirty-five years; another owned adjoining land and had
known the particular land from before 1897 and the other
examined the place in 1899 with a view of buying a farm,
and was acquainted with the value of such land.   Each quali-
fied, very satisfactorily, to testify to the value.   The land
was described as light and rough, without any valuable tim-
ber, as badly cut up by ravines and impaired by washing,
and the buildings were said to be poor,—all of log construc-
tion except the house and part of that was of such construc-

tion. They placed the value at from $1,700 to $2,500. There were some quite persuasive corroborating circumstances.

In view of the record as indicated, we cannot escape the conclusion that the evidence very significantly preponderates against the finding that the farm was worth $4,000 in 1897. The character of the four witnesses, and their probable appearance on the stand, rather corroborates their testimony than furnishes any warrant for holding that it does not manifestly outweigh the weak opposing evidence. It seems clear that the proper conclusion is that the farm was worth not more than $2,500 and probably less,—somewhere close around $2,200, in 1897, or but a very small amount more than the incumbrance upon it and the other indebtedness of Gottfried Schiefelbein when he made the deed.

The error as to the value of the farm, doubtless, led to the conclusion that, by the agreement Mittelstadt made with his grantor, it was intended that he, his heirs or assigns, should pay the three children the amounts contingently provided for them and that such amounts aggregated $1,000 each. There is nothing in the deed indicating that the grantee was to be permitted to pass his obligations on to his vendee. They were expressly made personal on his part. The very nature of the instrument and the whole transaction, including the lease of the personal property, rebut the idea that anything else was contemplated. Any shifting of the responsibility was a breach of the condition of the conveyance. Had there been no express condition, one, if necessary, would have been read out of the instrument by the rule of construction peculiarly applicable to such situations and enforced by forfeiture or otherwise, as needed for the protection of the grantors as to the dominant purpose of the grant and all which were inseparably connected therewith. *Gudden v. Estate of Gudden,* 113 Wis. 297, 89 N. W. 111; *Wanner v. Wanner,* 115 Wis. 196, 91 N. W. 671; *Burgson v. Jacobson,*

124 Wis. 295, 102 N. W. 563; *Gall v. Gall,* 126 Wis. 390, 105 N. W. 953; *Lowrey v. Finkleston,* 149 Wis. 222, 229, 134 N. W. 344. The last case cited, as suggested by counsel for appellant, is directly in point. There the court held that the agreement was purely a personal one for reasons appearing upon the face of the deed, all of which, and others, characterize this case.

The two errors indicated led to the finding of fact, so called, that the $1,000 of Mr. Schiefelbein's indebtedness was paid in ten years, which was essential to give vitality to the provision for the three children. The condition precedent was payment of the $1,000 by Mittelstadt,—not by any one else or by using the property therefor. Doubtless, considering that the equity in the real estate and the value of the personal property was not large, in view of the burden imposed on Mittelstadt, independently of the provision for the three children, it might be more, than he could bear, he was given the long term of ten years, which might probably span the remainder of the lives of the grantors, to pay the $1,000, and was not compelled to make payment in such time. The entire situation created by the deed and the lease points to a purpose that the entirety should be kept intact for protection of Schiefelbein and wife so long as they, or either of them, should live, otherwise that the property should revert and that such an event was thought to be probable, which was confirmed by Mittelstadt tiring of his bargain in about two years and conveying back to his mother without having paid off any of the incumbrances. The manner in which the personal property was turned over to Mittelstadt significantly shows that the intention was that all the property was to be devoted by him, as indicated, not sold or used to pay the indebtedness. His use of the personalty was limited to such time as he should stay on the farm and perform all the conditions of the deed. He was not permitted to dispose of any of it without replacing the same or paying the proceeds over

to the lessor.   His interest was not to ripen into an absolute title except upon condition of his remaining on the farm so long as the lessor and his wife, or either of them, should live.

While the court found that during the two years Mittelstadt possessed the farm, he paid $600 of the indebtedness and that, later, the balance was, in effect, paid by him through the transfer to his mother and her transfer to appellant, the evidence shows that the payment of $600, so called, consisted of his taking up the old mortgage indebtedness of $400 and a note of $100, by giving a new mortgage, and paying a small amount of other indebtedness by use of money.   The indebtedness against the property, which it was intended should be discharged, was not lessened at all. It was, in the end, satisfied by using the property therefor which was foreign to the purpose of the conveyance to Mittelstadt.

So, not only is the conclusion, that the condition in the deed did not contemplate personal payment by Mittelstadt, not warranted by the facts, but it contradicts the plain letter of the deed, as does also the conclusion that payment of $1,000 of indebtedness was made in two years, as contemplated by Mr. Schiefelbein.   "Pay" is a word of quite comprehensive meaning; but we agree with counsel for appellant that, as used in the deed, it was evidently intended to have its ordinary meaning which is to discharge an indebtedness by the use of money.   The thought was payment which would relieve the property from incumbrance, not a mere change in form, or of creditors, leaving the property burdened as before, or a discharge of indebtedness by using the property therefor.   That the ordinary meaning of the word "pay" is as indicated, is supported by *Becker v. Chester,* 115 Wis. 90, 122, 91 N. W. 87, 650, and cases cited to our attention.   *Marinette v. Oconto Co.* 47 Wis. 216, 2 N. W. 314; *Oneida Co. v. Tibbits,* 125 Wis. 9, 15, 102 N. W. 897. That, as used in this case, it contemplated the movement of

money to the creditors and actual extinguishment of indebtedness, seems very plain.    Therefore it is considered that the conclusion that the circumstance occurred, specified in the deed as essential to vitalize the provision for the three children, cannot be approved.    The conclusion should, it seems, have been to the contrary.

The decision below that the conveyance of land by one person to another by deed, on condition of such other paying to a third person a specified sum of money, and acceptance of such conveyance, creates a lien upon the land in favor of such third person, is correct,—*Wier v. Simmons,* 55 Wis. 637, 13 N. W. 873; *Williams v. Williams,* 82 Wis. 393, 52 N. W. 429; *Merton v. O'Brien,* 117 Wis. 437, 94 N. W. 340; *Powers v. Powers,* 28 Wis. 659; *Korn v. Friz,* 128 Wis. 428, 107 N. W. 659; but where the payment is made contingent upon a condition precedent, the lien is likewise contingent and, if the time limited for such precedent event to occur expires without its happening, the possibility of the lien ripening into an absolute interest no longer exists.    That was what happened in this case.

By the same logic the doctrine of *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440, and similar cases, has no application here.    If one, for a consideration moving to him from another, agrees to pay a third person a sum of money, the law creates the essential of privity between him and such third person, making a binding contract between them which cannot be impaired by any subsequent agreement between such other and the first person without such third person's consent; but where the promise to pay is conditional, it will wait upon the condition being satisfied, and if the time set therefor lapses without such satisfaction occurring, the promise falls with it.    So the contingent lien and obligation to pay in this case never ripened into absolute rights and, in the nature of things, never can.

Thus the end of this case has been reached without any

necessity for considering whether the language of the contingent provision for the three children is void for uncertainty, or, if not, whether the trial court correctly construed such language, or whether the interest of the three children was extinguished by the statute of limitations, or became unenforceable, by laches, or whether, equitably, appellant should have been adjudged to have a lien upon the property for the value of his improvements superior to any interest of respondents, some of which, particularly the first two, are involved in much difficulty.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to dismiss the same with costs.