233 Wis.2d 592 (2000)
2000 WI App 60
608 N.W.2d 746
KOHLER COMPANY, Petitioner-Respondent,
v.
SOGEN INTERNATIONAL FUND, INC., Helen Winter, Catharine Bemis Stayer, Barbara H. Loveland, John H. Strauss, Rita R. Strauss, Marie H. Kohler, John M. Kohler Trust f/b/o Marie H. Kohler, Julilly W. Kohler, John M. Kohler Trust f/b/o Julilly W. Kohler, Gillian B. Kohler, Robert E. Kohler, Jr., Victoria G. Kohler, Cathlin Deborah Kohler, Briggs & Stratton Corporation, Isbelle Miller and George M. Chester, Trustees of George Chester Residuary Trust, Smith Barney Incorporated, Verne R. Read, Trustee of Marian C. Read Residuary Trust, James F. and Mercedes C. Heyrman Revocable Trust, Marshall & Ilsley Trust, Willard and Eunice Kohlhagen, Dexter Defnet, Bonnie Kohl, Laurie Andruscavage, Patrick M. Wilson, ABNAMRO, Inc., a foreign corporation, Associated Bank Green Bay, N.A., as Trustee for Janet A. DeSpirito, Associated Bank Green Bay, N.A., as Trustee for Krueger International, Inc., Salaried Employees' Retirement Plan, Associated Bank Green Bay, N.A., as Trustee for John Rose, Sr., Associated Bank Green Bay, N.A., and Allan Ross as Trustees for the Thomas R. Nelson Trust, Frederick E. Baer, Bank America NT & SA, d/b a Seafirst Bank, as Trustee for the Rosebud Trust, Thomas J. Beno, M.D., as Trustee for Thomas J. Beno M.D. Revocable Trust, Gerald L. Buckley, Catherine Ann Calaway, Susan A. Hook Czarnocki and Sara E. Cartledge, Josephine P. Delorenzo as Trustee for Josephine P. Delorenzo Trust UAD, John A. Denis, Paul D. Dibley, DDS, S.C. as Trustee of *593 Profit Sharing Plan & Trust, Michael D. Donovan as Trustee of Michael D. Donovan Rev. Living Trust, Quinn M. Donovan, Milton Duescher, Eugene W. Dwyer and Eileen M. Dwyer, George M. and Margaret E. Evans, Paul W. Fairchild, Jr., Clara Mae Felts, Orlin F. Felts, Carolyn L. Fey, Sara Fortune, Richard O. and Patricia P. Friday, Mary E. Gehr and Robert J. Gehr as Co-Trustees of the Mary E. Gehr Revocable Living Trust, Mary E. Gehr and Robert J. Gehr as Co-Trustees of the Robert J. Gehr Revocable Living Trust, Marvin Gerlikovski, Donald J. Heinzen, Scott D. Hendrickson, Dr. Harold J. Hoops, Jr., and Mrs. Frances Hoops, Susan K. James, Paul R. Johnson, Clarence M. and Juelaine Krahn, James F. Kress, Laurie A. Lamberg, Bonnie R. Laird, Benjamin W. Laird and William D. Laird, Dr. Frederick Joseph Lamont, Christopher Larson, M.D., and Randine Larson, Herbert C. Liebmann, Jr., and Marie V. Liebmann as Trustees for Herbert C. and Marie V. Liebmann Revocable Trust, Leonard C. Liebmann as Trustee of Leonard C. Liebmann Revocable Trust, Ruth Liebmann as Trustee for Ruth Liebmann Revocable Trust, John J. Mackin, Jr., Edward N. Martin, Margaret Ellen Martin, Mary Ellen Martin as Trustee for Margaret Martin Trust, Mary Ellen Neufeld Martin, Patrick Albert Martin and Mary Ellen Neufeld Martin, c/o Fiduciary Trust Company as Trustees for Mary Ellen Neufeld Martin Trust A, Patrick Albert Martin and Mary Ellen Neufeld Martin, c/o Fiduciary Trust Company as Trustees for Mary Ellen Neufeld Martin Trust B, Patrick Albert Martin and John C. Brogan as Trustees for Mary Ellen Neufeld Martin 1997 Supplemental Trust, Patrick Albert Martin, Christine E. Mayer, Marilyn Kane Miller, Herbert J. Mueller, E. Frederick Murphy, Elbridge N. Murphy, *594 John G. Murphy, Janet C. Muth, Franklin Mutual Advisors, Inc., as Trustees for Mutual Discovery Fund, MV Partners, Frederick W. Neveu and Mercedes M. Neveu as Trustees for the Frederick W. Neveu and Mercedes M. Neveu Revocable Trust, Norbert & Company, c/o The Premonstratensian Fathers, Wayne R. Peterson, James W. Piette, Suzanne M. Piette, David Putz, Myron and Robert Rabinovitz, Michael C. and Jessica M. Raymaker as Trustees for Michael C. and Jessica M. Raymaker Trust/Raymaker Living Trust, Richard W. Ross and Ruth E. Ross, Bruce H. Ruoff, George Sarkis, Ronald A. and Janet M. Schauer, Robert T. Schmidt, M.D., as Trustee for Robert T. Schmidt, M.D., and Jane S. Schmidt Revocable Trust of 1990, Bank One Trust Company as Trustee for Verna C. Sharpe Revocable Trust, Gene H. Specht and Carol Ann Specht, Norwest Bank WI, National Association Investments and Trust as Trustee for Walter J. Koepsell, Jr., Family Trust, Alice B. Stayer, Dudley J. Godfrey, Jr., as one of the Trustees for Ralph C. Stayer Life Insurance Trust, Ralph F. Stayer, Jane F. Stoehr, Frances Stoll, Marjorie C. Stolz, Margaret Stovic, Ralph Stovic, Margery H. Uihlein, c/o The Glenora Company as Trustee for the Margery H. Uihlein Revocable Trust, Barbara Van Abel as Trustee of Stoll Family Trust, Merlin A. and Delores A. Vanderheiden, George and Aune A. Virt, Steven A. Virt, Michael L. Wagner, William M. Wesley, Jean A. Wielgus, Lloyd A. Wielgus, Frederick C. Wieting, Jr., and Kathleen A. Wieting, Rosa Wiza, John and Mary E. Martin Zellerbach as Trustees for Zellerbach Living Trust, dated 2/14/91, Separate JWZ, John and Mary E. Martin Zellerbach as Trustees for Zellerbach Living Trust, dated 2/14/91, Separate MEMZ, David K. Dunn, M.D., Edward F. Biedron, and *595 Thelma Harwitz and Wm. H. Schield, Jr., as Trustees, Respondents-(In T. Ct.),
SANBORN TUBE SALES OF WISCONSIN, INC., Intervening-Respondent-Appellant.[]
No. 99-0960.
Court of Appeals of Wisconsin.
Submitted on briefs December 17, 1999.
Decided February 9, 2000.
*598 On behalf of the intervening-respondent-appellant, the cause was submitted on the briefs of Kevin J. Lyons, David J. Hase and Michael J. Lund of Cook & Franke S.C. of Milwaukee.
On behalf of the petitioner-respondent, the cause was submitted on the brief of W. Stuart Parsons, Kevin M. Long and Brian D. Winters of Quarles & Brady LLP of Milwaukee.
Before Brown, P.J., Nettesheim and Anderson, JJ.
¶ 1. ANDERSON, J.
Sanborn Tube Sales of Wisconsin, Inc. (Sanborn) appeals from a declaratory judgment finding that it waived its right to demand fair value payment from Kohler Company for its shares in that company. Sanborn intervened in Kohler's WIS. STAT. § 180.1330 (1997-98)[1] special proceeding for a determination of the fair value of the shares Kohler sought to purchase from its shareholders. Sanborn argues that as an intervenor its status is equal to that of any other respondent, allowing it to remain in the case until the demand for payment is adjudicated. Because Kohler did not object to Sanborn's intervention in the proceeding, Sanborn asserts that Kohler has no defenses to its liability.
¶ 2. In granting the declaratory judgment, the trial court determined that Sanborn waived its right to demand payment from Kohler by not notifying the company within thirty days that it was dissatisfied with the payment amount for its shares. Sanborn objects to the court's method for determining when Kohler made the payment for the shares. It contends that the correct payment date is not the date it received the check for *599 its shares from Kohler, but the date the funds were actually credited to its bank account and were available for use.
¶ 3. We affirm the court's grant of declaratory judgment. Sanborn waived its right to demand payment because we conclude that the prevailing method for determining when a payment by check was made is the date when the payee received the check. Additionally, the declaratory judgment was proper even though Sanborn intervened in the special proceeding. The trial court did not err by granting the judgment because Sanborn was fully participating in the action and was subject to any relief that Kohler was legally entitled to obtain.

BACKGROUND
¶ 4. This case began when a majority of Kohler shareholders voted to merge their company with KofK Co. Sanborn voted against the merger, exercised its right to dissent and sought the fair value of its Kohler shares. See WIS. STAT. § 180.1302(1)(a). Kohler paid each dissenting shareholder $55,400 per share plus interest, its estimate of the shares' fair value. Many dissenters notified Kohler that they were dissatisfied with its calculation of the shares' fair value. See WIS. STAT. § 180.1328(1). To resolve this dispute, Kohler petitioned the court for a special proceeding pursuant to WIS. STAT. § 180.1330(1) to determine the shares' fair value and named the dissenting shareholders as the respondents in the action.
¶ 5. Sanborn was not named as a respondent in the special proceeding. On June 24, 1998, it received a check from Kohler for $167,422.82 as payment for its three shares of Kohler stock. This amount was not credited to Sanborn's bank account and available for *600 use until June 29, 1998. On July 28, 1998, Sanborn notified Kohler that it was dissatisfied with Kohler's valuation of the shares, asserting that the shares' fair value should be $100,385 each. The next day Kohler informed Sanborn that its dissenter rights were waived because it did not inform Kohler of its dissatisfaction within the required thirty days. See WIS. STAT. § 180.1328(2). Because it determined that Sanborn had waived its dissenter rights, Kohler did not name Sanborn as a respondent in the proceeding to settle the valuation of its shares.
¶ 6. Sanborn responded by moving the court to permit it to intervene as a respondent with the other dissenters in Kohler's special proceeding. Kohler did not oppose Sanborn's motion, which was granted by the court. After Sanborn successfully intervened in the special proceeding, Kohler moved for a declaratory judgment. It argued that Sanborn had waived its right to demand payment from Kohler and therefore waived its right to be a party to the proceeding to determine the fair value of Kohler's shares. After hearing oral arguments on the motion, the court granted the declaratory judgment and dismissed Sanborn from the proceeding. Sanborn appeals.

DISCUSSION

A. Did the Trial Court Err by Permitting Kohler to Bring a Motion for Declaratory Judgment?
[1, 2]
¶ 7. "Intervention is a procedure by which an outsider with an interest in a lawsuit may participate in the suit as a party, although the intervenor was not named as a party by the existing litigants." 3 JAY E. *601 GRENIG & WALTER L. HARVEY, WISCONSIN PRACTICE § 309.1 (2d ed. 1994). WISCONSIN STAT. § 803.09 provides the mechanism whereby anyone who claims "an interest relating to the property or transaction . . . of the action" and needs to protect this interest by participating in the action shall be permitted to intervene in the action.
¶ 8. Arguing that it had a legally protected interest in settling its demand for payment of its Kohler shares, Sanborn intervened in the special proceeding. Kohler did not oppose Sanborn's intervention. However, in its letter to the trial court in response to Sanborn's intervention motion, Kohler stated its position that Sanborn "ha[d] not perfected its rights under the dissenter's rights sections of Ch. 180, Wis. Stats." and that even though Kohler chose not to oppose Sanborn's motion, it planned to litigate Sanborn's status in the action. As it said it would in its letter, Kohler sought and obtained a declaratory judgment on Sanborn's status, which is the subject of this appeal.
¶ 9. Sanborn contends that Kohler was procedurally barred from bringing the declaratory judgment motion and challenging its status in the action. Because Kohler initially failed to oppose its intervention, Sanborn insists that Kohler cannot contest its status in the action. In Sanborn's view, special proceedings under WIS. STAT. § 180.1330 are limited to only a determination of the shares' fair value. The rules of procedure do not apply, it argues. The only issue is the shares' valuation, and if that value is determined to be greater than what Kohler paid, the company has no defense to its liability to pay the difference. In response, Kohler counters that it made its intention to litigate Sanborn's status clear in the letter to the court *602 and that Sanborn became subject to the court's adjudication of that issue after intervening in the action.
[3, 4]
¶ 10. Determining what procedures are available to parties in a special proceeding when a party intervenes in that action is a question of law. Our review of a trial court's decision on a question of law is de novo. See State ex rel. Bilder v. Township of Delavan, 112 Wis. 2d 539, 549, 334 N.W.2d 252 (1983).
¶ 11. Although this is an issue of first impression in our state, the issue is well settled among other jurisdictions. Simply put, Sanborn's status after intervention was the same as all the other participants in the proceeding, and because of this, Kohler could pursue any legal claims and defenses it had against Sanborn.
¶ 12. An intervenor's status in an action is summarized as follows:
When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party. The intervenor renders itself "vulnerable to complete adjudication by the federal court of the issues in litigation between the intervenor and the adverse party." It is said to assume the risk that its position will not prevail and that an order adverse to its interests will be entered. As we said recently, "the possibility that the plaintiff will be able to obtain relief against the intervenor-defendant" is part of the "price" paid for intervention.
Schneider v. Dumbarton Developers, Inc., 767 F.2d 1007, 1017 (D.C. Cir. 1985) (citations omitted) (discussing intervention under the FED. R. CIV. P. 24, essentially the same as WIS. STAT. § 803.09, see Fox v. DHSS, 112 Wis. 2d 514, 536, 334 N.W.2d 532 (1983)).
*603 [5, 6]
¶ 13. In a special proceeding, a corporation must name all the dissenters "whose demands remain unsettled" as the respondents in the action. See WIS. STAT. § 180.1330(3). The purpose of the proceeding is to settle all the dissenters' demands for payment. Once Sanborn entered the action and achieved respondent status, it was proper for Kohler to raise, and for the court to entertain, any issues regarding whether Sanborn's demands remained unsettled. Kohler was not barred from seeking a declaratory judgment on whether Sanborn had satisfied all the legal conditions and created an entitlement to recovery in the demand for payment action.
[7, 8]
¶ 14. Similarly, Kohler's request for a declaratory judgment was not barred because Kohler did not oppose Sanborn's intervention. By intervening, Sanborn became vulnerable to the adjudication of all the issues. In fact, Kohler had warned Sanborn that it intended to pursue its claim that Sanborn had waived its dissenter rights. Likewise, Kohler was not barred from pursuing its claims and defenses against Sanborn because the action was a WIS. STAT. § 180.1330 special proceeding. The procedures and practices explained in WIS. STAT. chs. 801 to 847 govern special proceedings as well as civil actions unless the special procedure statute indicates to the contrary. See WIS. STAT. § 801.01(2); State v. Jody A.E., 171 Wis. 2d 327, 335-36, 491 N.W.2d 136 (Ct. App. 1992). Because the special proceeding outlined in § 180.1330 does not provide for any different procedures, Kohler had all the usual procedural mechanisms at its disposal to facilitate the action's resolution.
*604 [9]
¶ 15. The discussion above also disposes of Sanborn's complaints that by allowing the motion for declaratory relief, the trial court: (1) violated its own local court rule requiring that an objection to an order be filed with the court within ten days of service, and (2) erred by not requiring Kohler to meet the requirements in WIS. STAT. § 806.07 for relief from an order. With both of these arguments, Sanborn asserts that what was being litigated was the propriety of the intervention order. After Sanborn intervened in the proceeding, Kohler moved for declaratory relief based on its contention that Sanborn had not properly complied with the procedures for a dissatisfied dissenter provided in WIS. STAT. § 180.1328(2). The issue before the court was no longer if Sanborn should be allowed to intervene; rather, the issue had become whether Sanborn was entitled to any recovery in the special proceeding. After it intervened, Sanborn was a full participant in the special proceeding and was vulnerable to the court's adjudication on whether it had waived its dissenter rights. As previously quoted, "`the possibility that the [petitioner] w[as] able to obtain relief against the intervenor-[respondent]' is part of the `price' paid for intervention." Schneider, 767 F.2d at 1017 (citation omitted). We find no trial court error.

B. Is It an Erroneous Conclusion of Law that a Check's Payment Date is the Date the Payee Receives the Check?
[10]
¶ 16. A dissenter waives his or her right to demand payment unless it notifies the company of the demand in writing within thirty days after the payment was made or offered. See WIS. STAT. § 180.1328(2). *605 Kohler argues that Sanborn did not notify Kohler within thirty days of the payment date and thus waived its right to demand payment. Sanborn disagrees. The parties dispute the date that should be considered as the payment date, the trigger for the thirty-day notice period to begin. Our resolution of this dispute requires statutory interpretation under a de novo review. See Truttschel v. Martin, 208 Wis. 2d 361, 364-65, 560 N.W.2d 315 (Ct. App. 1997).
¶ 17. Kohler argues that payment was made to Sanborn on the day that Sanborn received the check for the shares from Kohler. Sanborn received Kohler's check on June 24, 1998. Sanborn, however, asserts that the payment was not made until the funds from Kohler's check were credited to Sanborn's bank account. The funds became available in the account on June 29. Kohler received notice that Sanborn was dissatisfied with the shares' value on July 28. As a result, unless we accept Sanborn's view of when the payment was made, Sanborn's dismissal from the special proceeding was appropriate because Sanborn failed to give Kohler thirty-days' notice as required in WIS. STAT. § 180.1328(2).
¶ 18. Among other jurisdictions, the prevailing view on this issue is that a payment date refers to the date the check was received by the payee. For example, the Minnesota Court of Appeals stated that when payment is made by check, "the debt is considered to have been paid when the check was given." Gorblirsch v. Heikes, 547 N.W.2d 89, 93 (Minn. Ct. App. 1996). Other jurisdictions, including Wisconsin, are in accord.[2]See, *606 e.g., Staff Builders, Inc. v. Koschitzki, 989 F.2d 692, 695 (3d Cir. 1993); C.C. Duke v. Sun Oil Co., 320 F.2d 853, 861 (5th Cir. 1963); Gudenau v. Bierria, 868 P.2d 907, 911 (Alaska 1994); Jacobson v. Bentzler, 127 Wis. 566, 568, 107 N.W. 7 (1906).
¶ 19. In Jacobson, the plaintiff argued that a check was not paid on a Sunday, contrary to the Sunday law that prohibited business being conducted on the first day of the week, because the payment "was not made until the check had been paid at the bank," which was after Sunday. Jacobson, 127 Wis. at 568. The court disagreed, responding that "it seems clear that acceptance of a check on a bank is in the nature of a conditional payment, which becomes complete when accepted and when the amount due on it is actually paid, and that such payment relates back to the time of its delivery." Id. (emphasis added). Because the payee received the check on Sunday, it did not matter when the check's funds were actually available; the payment date was Sunday, the day the payee received the check. See id. at 568-69.
[11]
¶ 20. We agree with the prevailing view and conclude that when payment is made by check, the payment date is the date that the payee receives the *607 check. This is not only the view held by the commercial world[3] but also by the general public.
[The] common use of the term "payment" . . . explains it as "something given to discharge a debt or obligation." . . . A [debtor] makes out his [or her] . . . check for the amount he [or she] figures he [or she] owes. If that is not the sending of money in discharge of the debt it is hard to figure out what a "payment" can be.
Staff Builders, 989 F.2d at 694 (citation omitted).
[12]
¶ 21. Sanborn had thirty days to give Kohler notice of its demand for payment. Sanborn received Kohler's check on June 24 and notified Kohler of its demand on July 28. Consequently, Kohler was not notified of Sanborn's demand within the thirty-day notice period.[4] Sanborn thus waived its dissenter rights. We *608 affirm the declaratory judgment and the dismissal of Sanborn from the special proceeding.
By the Court.Order affirmed.
NOTES
[] Petition to review denied.
[1] All references to the Wisconsin Statutes are to the 1997-98 version unless otherwise noted.
[2] Sanborn lists the following cases as supporting its contention that Wisconsin courts have stated that payment is made only when the monies are available for the payee's use: Angelo v. Railroad Comm'n, 194 Wis. 543, 547, 217 N.W. 570 (1928) (discussing the phrase "determine the compensation to be paid to the state" as connoting that money should be used to pay the state for the material); Krahn v. Goodrich, 164 Wis. 600, 610-11, 160 N.W. 1072 (1917) (concluding that a debt was not satisfied without the movement of money); Oneida County v. Tibbits, 125 Wis. 9, 16, 102 N.W. 897 (1905) (determining that town treasurers are not allowed to accept "certificates of audited expenses" as payment for county taxes). We have reviewed these cases and find them to be easily distinguishable.
[3] Under the Uniform Commercial Code, when a payment is made by a check, the time of payment is defined as follows:

When a check is given and received as absolute payment, payment is made when the check is issued and delivered to the creditor. When the giving of the check merely suspends the underlying debt, the debt is not paid when the check is issued or delivered. In such cases the payment of the underlying debt does not become absolute until the check is honored or paid, at which time the underlying debt is deemed paid as of the date of the giving of the check.
6A RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-802:63 (3d ed. 1998) (emphasis added).
[4] Although Kohler does not raise the issue, we note that WIS. STAT. § 130.1328(2) states that dissenters waive their right to demand payment if the corporation is not given notice of the demand "within 30 days after the corporation made or offered payment for [their] shares." (Emphasis added.) The offering of payment is sufficient to begin the thirty-day notice period. If merely offering payment is sufficient to begin the notice period, then the receipt of a check without the actual use of the check's funds must also be sufficient to trigger the notice period.